# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 12, 2012

No. 12-20217
Summary Calendar

Lyle W. Cayce
Clerk

NATIONAL CASUALTY COMPANY,

Plaintiff - Appellee

v.

KIVA CONSTRUCTION & ENGINEERING, INCORPORATED; JOSEPH MCDERMOTT,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-03854

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

National Casualty Company filed a complaint asserting claims for breach of settlement agreement and money had and received against defendants Kiva Construction & Engineering, Inc., and its owner and president Joseph McDermott. Defendants counterclaimed, alleging that National Casualty breached the settlement agreement, engaged in deceptive trade practices, and

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

operated in bad faith. The district court granted National Casualty's motion for summary judgment against Kiva, dismissed Defendants' counterclaims, and entered final judgment in National Casualty's favor. Kiva appeals the district court's summary judgment order. Both Defendants appeal the district court's dismissal of their counterclaims and entry of final judgment in favor of National Casualty. For the reasons set forth below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Kiva Construction & Engineering, Inc. ("Kiva") is engaged in the marine construction business. Kiva is owned by defendant Joseph McDermott ("McDermott"), who also serves as the company's president. At all times relevant to this dispute, plaintiff National Casualty Company ("National Casualty") provided insurance coverage to Kiva for certain vessels owned and/or operated by Kiva.

After Hurricane Ike struck the Texas coast in 2008, Kiva made several claims under its policy with National Casualty for losses Kiva suffered in connection with a number of its vessels. Although the parties disagreed as to the validity of certain claims, on March 24, 2010, they entered into a settlement whereby Kiva agreed to accept $710,000 from National Casualty in full and final satisfaction of the disputed claims. The following day, National Casualty sent several checks, totaling $710,000, to its counsel in New Orleans to fund the settlement. The parties dispute whether Defendants actually received all of the settlement checks. In particular, while National Casualty maintains that all of the checks were transferred to Defendants, Defendants contend that they originally received only a single check in the amount of $610,000.[1] Defendants

---

[1] Although National Casualty argues that Defendants received each of the checks, it acknowledges that most went uncashed. Stop payment orders were eventually issued for all uncashed checks.

therefore argue that, initially, National Casualty only partially satisfied its obligations under the settlement agreement.

No party disputes, however, that McDermott received and deposited a check for $610,000 on Kiva's behalf.  Given that check's high value, National Casualty requested verification from McDermott of the authenticity of his endorsement.  The verification was not timely received, which typically would have resulted in rejection of the check.  Due to a clerical error, however, the check was approved even though it was classified as rejected.  Accordingly, $610,000 was transferred from National Casualty to Kiva.

Nevertheless, because National Casualty believed the check had been rejected, it issued a replacement check to Kiva for $610,000.[2]  By the time McDermott endorsed and deposited the second check, Kiva had received from National Casualty $1,220,000, rather than the $710,000 it was owed under the settlement agreement.  Despite National Casualty's repeated demands for reimbursement, and although Kiva acknowledged that it had been overpaid, Defendants refused to tender to National Casualty the $510,000 overpayment.  Instead, on several occasions, Defendants attempted to remit to National Casualty partial repayments or offer various unsecured repayment terms.  National Casualty rejected these offers because they did not provide the company with any security for the remaining portion of Kiva's debt, they provided no guarantee that the entirety of the debt would eventually be paid, and they permitted Kiva to continue to use, interest-free, National Casualty's money.

In light of the continuing dispute, National Casualty filed suit against Kiva and McDermott on October 15, 2010, alleging causes of action for breach of contract and for money had and received.  Based on their contention that

---

[2] McDermott received the replacement check a mere six or seven days after receiving the first check.

National Casualty initially had not timely paid the full settlement amount, Defendants asserted counterclaims against National Casualty for "breach of contract, bad faith and/or deceptive trade and/or claims or settlement in violation of the applicable law." Defendants also argued that by declining Defendants' partial repayment checks or repayment terms, National Casualty failed to mitigate its losses.

On June 3, 2011, National Casualty moved for summary judgment and provided the court with supporting evidence, including (1) a copy of the settlement agreement, (2) copies of the settlement checks and proof of delivery receipts, (3) copies of McDermott's endorsement on the two $610,000 checks, and (4) McDermott's deposition, wherein he acknowledged the overpayment, but stated that he did not have sufficient funds to repay it. Defendants opposed the motion, arguing that it was National Casualty that had breached the settlement agreement by initially failing fully to fund the $710,000 settlement. Defendants also continued to argue that National Casualty failed to mitigate any damages it may have suffered, because it declined the partial repayments Defendants offered.

On September 20, 2011, the district court notified the parties "that [the] matter would be resolved on the papers." Nearly four months later, on January 11, 2012, the district court granted National Casualty summary judgment against Kiva, but denied summary judgment against McDermott.[3] National Casualty subsequently moved for entry of final judgment. Defendants opposed the motion, arguing that their counterclaims had not been addressed in the court's summary judgment order. On February 29, 2012, the district court entered final judgment in National Casualty's favor, awarding National

---

[3] The district court denied the motion against McDermott after holding that National Casualty failed to demonstrate that a contractual relationship existed between it and McDermott. National Casualty does not appeal this ruling.

No. 12-20217

Casualty $510,000, plus interest.   The court also dismissed Defendants'
counterclaims, holding that "[b]ased on the undisputed facts," those claims
"fail[ed] as a matter of law."

Defendants timely appeal, asserting two claims of error.   First, Kiva
argues that the district court erred in granting National Casualty's  summary
judgment motion because there were disputed facts regarding whether National
Casualty initially made all required payments under the settlement agreement
and whether it mitigated any damages it may have suffered.   Second,
Defendants contend that the district court erred in granting National Casualty's
motion for entry of final judgment because, in so doing, the court improperly
dismissed Defendants' counterclaims.

## II. STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same
standard as the district court." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir.
2012).   Summary judgment is proper "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine,' if the
evidence is such that a reasonable [trier of fact] could return a verdict for the
nonmoving party."   *Crowe v. Henry*,  115 F.3d 294, 296 (5th Cir. 1997).
"Unsubstantiated   assertions,   improbable   inferences,   and   unsupported
speculation are not sufficient to defeat a motion for summary judgment." *Brown
v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

"Summary judgment procedure is properly regarded not as a disfavored
procedural shortcut, but rather as an integral part of the Federal Rules as a
whole, which are designed to secure the just, speedy and inexpensive
determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)
(internal quotation marks and citation omitted).  Accordingly, "district courts are
widely acknowledged to possess the power to enter summary judgments *sua*

5

No. 12-20217

*sponte*, so long as the losing party was on notice that she had to come forward with all her evidence." *Id.* at 326.

## III. DISCUSSION

### A.     The District Court Did Not Err in Granting Summary Judgment

In granting National Casualty's summary judgment motion, the district court held that there was no genuine dispute as to any material fact in connection with either National Casualty's claim for breach of contract, or its claim for money had and received. We agree.

### 1.     National Casualty's Breach of Contract Claim

Under Louisiana law, a plaintiff seeking to recover on a breach of contract claim must establish by a preponderance of the evidence: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[4] *Favrot v. Favrot*, 68 So. 3d 1099, 1108–09 (La. Ct. App. 2011); *see also Adams v. Commercial Nat'l Bank in Shreveport*, 661 So. 2d 636, 639 (La. Ct. App. 1995).

Here, the uncontested facts establish that National Casualty entered into a settlement agreement with Kiva whereby Kiva agreed to release certain claims against National Casualty in exchange for $710,000. It is also undisputed that, due to a clerical error, Kiva received and deposited two checks from National Casualty—each in the amount of $610,000—resulting in an overpayment of

---

[4] Ordinarily, a federal court sitting in diversity, as here, must apply the forum state's substantive law. *See Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985). Although National Casualty argued in the lower court that Texas law applies to this dispute, Defendants asserted that, under a choice-of-law provision in the parties' settlement agreement, Louisiana law controls. While National Casualty maintained below that Defendants waived the right to assert the choice-of-law provision, it appears to have abandoned that argument on appeal and, in any event, it acknowledges that regardless of whether Texas or Louisiana law applies, the result is the same. We therefore apply Louisiana law and need not address National Casualty's argument below that the Defendants waived the right to invoke the choice-of-law provision.

No. 12-20217

$510,000. Kiva does not argue that the settlement agreement was not a valid agreement, nor does it dispute that it ultimately received from National Casualty $1,220,000, instead of the $710,000 due under the agreement. Indeed, Kiva's president has admitted on numerous occasions that the company owes National Casualty reimbursement for the overpayment.

Nevertheless, Defendants maintain that summary judgment was improper because material questions of fact remain as to whether National Casualty originally fully performed its obligations under the settlement agreement. In other words, they suggest that National Casualty breached the agreement because Defendants allegedly did not receive, in their initial payment, the full $710,000 due under the settlement agreement. They also assert that National Casualty could have mitigated its losses by accepting partial repayments subsequently offered to it by Defendants, or by entering into Defendants' proposed agreement regarding repayment terms.

Regardless of the parties' dispute surrounding the initial payment, Defendants offered no evidence that National Casualty did not, in fact, tender $1,220,000 to Kiva within days of the settlement agreement.[5] There was thus no dispute that Kiva received an overpayment. Moreover, National Casualty was not required to agree to repayment terms it found unacceptable, especially in light of McDermott's admission that Kiva owed National Casualty a refund, but was unable to satisfy that obligation due to insufficient funds.[6]

---

[5] By its terms, the settlement agreement did not specify a time by which National Casualty was required to make full payment. Defendants cite to Louisiana Revised Statute section 22:1973 for the proposition that failure to pay a settlement within thirty days constitutes a breach of an insurer's duties. As alluded to above, Defendants received and deposited both $610,000 checks within thirty days of the date of the agreement.

[6] McDermott repeatedly indicated that Defendants lacked funds to reimburse National Casualty, variously stating that Defendants had not returned the overpayment because "we don't have it," "we've used the money in our normal operating," and returning the full amount due "would have jeopardized the existence of the corporation."

Accordingly, as the district court properly held, the undisputed facts establish that: (1) a valid settlement agreement existed between National Casualty and Kiva, (2) although it was entitled to only $710,000 under that agreement, Kiva accepted $1,220,000 from National Casualty, and (3) because Kiva has refused to return the overpayment despite repeated demands, National Casualty has suffered damages in the amount of $510,000. Because there was no genuine dispute as to these material facts, the district court did not err in granting summary judgment to National Casualty on its breach of contract claim against Kiva.

## 2.     National Casualty's Money Had and Received Claim

National Casualty also moved for summary judgment on its claim for money had and received. Under Louisiana law, "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it." La. Civ. Code art. 2299. "[T]he right to reimbursement conferred by article 2299 exists regardless of whether such payment was made knowingly or through error." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 273 (5th Cir. 2003). "Numerous Louisiana cases hold that a mistaken payor's negligence will not bar his claim." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 329 (5th Cir. 2007) (collecting cases).

As we have discussed, there is no dispute here that Kiva received payment of $1,220,000 on an agreed settlement of $710,000. Despite repeated demands to return the $510,000 overpayment, Kiva does not deny that it has refused to tender reimbursement to National Casualty. Although Defendants again argue that National Casualty's alleged failure to mitigate precludes summary judgment on this issue, as explained, because Defendants had no legal right to retain the overpayment, National Casualty was not required to accept repayment terms it deemed objectionable. Accordingly, the district court did not

err in granting summary judgment to National Casualty on its claim against Kiva for money had and received.

## B.     The District Court Did Not Err in Entering Final Judgment

After the district court granted National Casualty's summary judgment motion against Kiva, National Casualty moved for entry of final judgment. The court granted the motion on February 29, 2012. Defendants argue that the district court erred in doing so because, by entering final judgment, the court summarily dismissed Defendants' counterclaims for "breach of contract, bad faith and/or deceptive trade and/or claims or settlement in violation of the applicable law."

In supporting their claim that the district court's entry of final judgment constitutes error, Defendants characterize the court's dismissal of their counterclaims as a Rule 12(b)(6) dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a court may not properly dismiss a complaint if it sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants further note that because "[a] motion to dismiss under [R]ule 12(b)(6) is viewed with disfavor . . . . [a] complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal quotation marks and citation omitted). Accordingly, Defendants assert that the district court erred in entering final judgment because it neglected these standards by summarily dismissing Defendants' counterclaims.

Our review of the record reveals, however, that the district court did not dismiss Defendants' counterclaims pursuant to Rule 12(b)(6). Instead, the court explained that it was dismissing the counterclaims because they "fail[ed] as a matter of law" "*[b]ased on the undisputed facts.*" In other words, the court's

dismissal of Defendants' counterclaims did not occur under Rule 12(b)(6), but rather under Rule 56—because there was "no genuine dispute as to any material fact."

This conclusion is supported by this court's previous holding that, where a district court bases its "disposition in part on the consideration of matters in addition to the complaint . . . . even if a motion to dismiss has been filed, the court must convert it into a summary judgment proceeding and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Fed.R.Civ.P. 56." *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980). Here, the parties provided copious amounts of evidence outside the pleadings, including affidavits, depositions, correspondence between the parties, copies of checks, and other exhibits. By the plain language of the district court's final judgment order, the court dismissed Defendants' counterclaims because this evidence established that there was no genuine dispute as to any of the material facts.

Defendants further argue, however, that summary judgment as to their counterclaims was improper because National Casualty did not expressly request summary judgment as to those counterclaims. Although it may be true that National Casualty never requested summary judgment in connection with Defendants' counterclaims, Defendants neglect that a district court may enter summary judgment *sua sponte*, so long as the losing party received notice that it was required to present all its evidence. Fed. R. Civ. P. 56(f); *Celotex Corp.*, 477 U.S. at 326. Here, the district court notified the parties on September 20, 2011, "that [the] matter would be resolved on the papers." Nevertheless, at no time between then and entry of final judgment on February 29, 2012, did Defendants provide the court with any evidence supporting their counterclaims.

Thus, Defendants mistakenly argue that they were not on notice that the district court was contemplating summary judgment against them. Indeed, this

case is analogous to *Scott v. Mississippi Department of Corrections*, 961 F.2d 77 (5th Cir. 1992). There, the district court had notified the parties that it was "considering the appropriateness of rendering a judgment on the merits, making submission of the case to a jury unnecessary." *Id.* at 79. Although the court's notification "failed to mention either the term 'summary judgment' or Fed.R.Civ.P. 56, under which summary judgment is granted," we nevertheless affirmed the court's *sua sponte* entry of summary judgment because "the court's ultimate order granting summary judgment did not catch [the parties] unprepared." *Id.*

Likewise, although the district court here did not use the phrase "summary judgment" or otherwise refer to Rule 56, its notice of September 20, 2011, stating "that [the] matter would be resolved on the papers," was a clear indication that the court was considering summary judgment, and that the parties therefore needed to offer evidence to support their claims. Defendants had ample opportunity to do so in the five months before the district court ultimately dismissed their counterclaims and entered final judgment. That they failed to do so does not constitute judicial error.

Accordingly, we find no error in the district court's entry of final judgment.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

11