# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2013

No. 12-40590
Summary Calendar

Lyle W. Cayce
Clerk

JP MORGAN CHASE BANK, N.A., FEDERAL HOME LOAN MORTGAGE
CORPORATION; RECEIVER FEDERAL DEPOSIT INSURANCE
CORPORATION, receiver for Washington Mutual Bank N.A.,

Plaintiffs-Appellees,

v.

GEORGE DIXON,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:10-cv-329

Before STEWART, Chief Judge, and JOLLY and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellees, JP Morgan Chase Bank, N.A. ("Chase") and Federal
Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Appellees"),
filed suit against Defendant-Appellant George Dixon seeking judgment declaring
the validity of a past foreclosure on Dixon's property, for superior title, and to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-40590

quiet title.  The district court granted summary judgment in favor of Appellees and dismissed Dixon's counterclaims.  We AFFIRM.

## I.

In September 1997, George Dixon executed a promissory note in the amount of $178,500, payable to PNC Mortgage Corporation of America ("PNC"), to finance the purchase of a residential property located on Melody Lane in Friendswood, Texas ("the Property").  To secure the note ("the Note"), Dixon executed a deed of trust naming PNC as the beneficiary.  Several years later in 2002, Washington Mutual Bank, F.A. (hereinafter, "WaMu") became the successor in interest to PNC by operation of law.  At that time, Dixon was notified that WaMu was the servicer and mortgagee of his loan.

In September 2007, Dixon stopped making payments on the Note.  In March 2008, WaMu's counsel notified Dixon of his default on the Note and gave him an opportunity to cure the default.  Dixon failed to do so.

Then, in September 2008, WaMu was declared insolvent and closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC").  The FDIC was appointed as the receiver of WaMu.  Consequently, Chase and the FDIC executed a Purchase and Assumption Agreement ("P&A Agreement") wherein Chase acquired certain assets and liabilities of WaMu from the FDIC.  The P&A Agreement provided that Chase acquired all loans and loan commitments of WaMu but that certain liabilities, *i.e.*, borrower's claims, were retained by the FDIC.  The following month in October 2008, Dixon was informed via written letter that Chase had become the mortgagee and servicer

No. 12-40590

for his loan due to WaMu's insolvency and closing.[1]  Shortly thereafter, Chase acquired the Note and deed and appointed a Substitute Trustee.

In October 2009, approximately one year after WaMu was declared insolvent and placed into receivership, Dixon filed suit against WaMu in Texas state court alleging claims under the Deceptive Trade Practices Act, in addition to claims of slander of title and tortious interference.  Moreover, in spite of the fact that Dixon had received notice from Chase in 2008 that it was replacing WaMu as the mortgagee and loan servicer of the Note, Dixon never joined Chase as a defendant in the state court suit.  Then on April 28, 2010, Dixon obtained a default judgment against WaMu wherein he was awarded in excess of $2.8 million dollars in damages and all liens on the Property were declared to be released, discharged, and cancelled.  Dixon recorded the state court default judgment in the real property records in Galveston, Texas.

In May 2010, due to Dixon's continuing default on the Note, Chase's counsel notified Dixon that the terms of the Note were accelerated and that the Property would be subject to foreclosure sale on June 1, 2010.  Then on June 1, the Property was sold to Freddie Mac for $222,761.[2]  The Substitute Trustee's deed was then recorded in the real property records in Galveston, Texas.

In August 2010, after the state court default judgment was rendered and filed in the conveyance records, Appellees filed suit in federal district court

---

[1] Chase informed Dixon in the October 2008 letter that, during a transitionary period, his loan would continue to be serviced under the name WaMu for purposes of convenience. Then in October 2009, Dixon was informed that the transition was complete and that his loan would be serviced under Chase's name from that point forward. Dixon, however, alleges that he understood Chase's instructions to indicate that his loan would be serviced by WaMu during this period, not just under the name of WaMu.

[2] According to Chase, in spite of the foreclosure sale, Dixon continues to live at the Property.

3

No. 12-40590

seeking a declaratory judgment that the June 1, 2010 foreclosure proceedings were valid and to quiet title of the Property in Freddie Mac's name.[3]

At the summary judgment proceedings, Appellees argued that they had superior title to the Property over Dixon because Chase properly acquired title from the FDIC, the receiver for WaMu, in September 2008. Because the FDIC, and not WaMu, acquired title after WaMu's insolvency and closing, WaMu had no interest in the Property that Dixon could have acquired by the state court suit. Additionally, Chase avers that it complied with all relevant provisions of the deed and the Texas Property Code during the foreclosure proceedings. Further, Chase asserted that an accurate payoff statement was provided to Dixon and that Chase properly reported the credit information associated with the status of Dixon's account.

Dixon countered that both Chase and WaMu represented that they were the servicers and mortgagees of the Note, thus, he challenged Chase's claim that Appellees had superior title to the Property. Dixon also contended that WaMu did not acquire the Note from PNC because PNC assigned the deed to the FDIC in 1997. Further, Dixon claimed that because the P&A Agreement did not specifically mention the Note, Chase could not establish that it was the true owner of the Note and deed. Additionally, Dixon sought to quiet his own title to the Property and submitted the following counterclaims against Chase: (1) trespass to title; (2) slander of title; (3) wrongful foreclosure; (4) tortious interference; (5) alter ego and single business enterprise; and, (6) fraud.

---

[3] Also during this time period, the FDIC filed a separate bill of review in Texas state court seeking to set aside the state court default judgment that remained pending during the district court summary judgment proceedings below. In June 2012 the state court granted summary judgment in favor of the FDIC and vacated the April 28, 2010 default judgment against WaMu. *See FDIC, as receiver for Wash. Mut. Bank, v. Dixon*, No. 11-cv-0690 (June 8, 2012).

No. 12-40590

In May 2012, the district judge entered an Amended Final Judgment in favor of Appellees holding that Freddie Mac held superior title to the Property through the valid foreclosure sale on June 1, 2010 and that the cloud on the Substitute Trustee's deed, which was created as a result of the recordation of the state court default judgment against WaMu, was thereby removed. The order further provided that Dixon took nothing on his counterclaims against Appellees. In his earlier memorandum opinion which was incorporated into the Amended Final Judgment, the district judge stated that: (1) it is undisputed that Dixon defaulted on the Note; (2) Dixon failed to provide evidence rebutting Chase's assertion that it acquired the Note and deed from the FDIC at the foreclosure sale of WaMu's assets in September 2008; (3) Dixon failed to provide evidence rebutting Chase's assertion that it complied with the Texas Property Code and the terms of the deed of trust when it foreclosed on the Property; and, (4) Chase had no duty to respect Dixon's efforts to sell the Property to a third party[4] since Dixon lost any sellable interest in the Property when he defaulted on the Note.

Dixon appeals *pro se* herein.[5]

## II.

On appeal, Dixon argues that: (1) the district court erred by nullifying and subsequently amending the final judgment of the state court in violation of the *Rooker-Feldman* Doctrine; (2) the district court erred in ruling that no issues of material fact existed at the summary judgment proceedings; and, (3) that the district court abused its discretion in summarily dismissing all of Dixon's claims

---

[4] At the proceedings below, Dixon asserted that he lost several prospective sales on the Property due to Chase's refusal to cooperate and provide the appropriate paperwork allowing Dixon to proceed with the sales.

[5] Dixon's attorneys withdrew at the summary judgment proceedings below and since then, he has proceeded *pro se*.

and counterclaims in violation of his Fourteenth Amendment Due Process rights.[6] We address each of these arguments in turn.

This court reviews a district court's grant of summary judgment de novo. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012) (citation omitted).

### A. The Rooker-Feldman Doctrine

Dixon argues that the district court rendered its Final Judgment and Amended Final Judgment in violation of the *Rooker-Feldman* doctrine. Dixon asserts that the Final Judgment was improper because it nullified the state court default judgment and the Amended Final Judgment was improper because it removed the title cloud created by the recordation of the state court default judgment previously rendered. We do not agree.

The *Rooker-Feldman* doctrine bars lower federal courts from "exercising appellate jurisdiction over final state-court judgments." *See Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012) (internal quotation marks omitted) (citation omitted). "It applies only in circumstances closely akin to those addressed in the *Rooker* and *Feldman* decisions, in which a party suffered an adverse final judgment rendered by a state's court of last resort, and then initiated proceedings in a lower federal court seeking review and reversal of the state-court judgment." *Id.* (citations omitted); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). "Accordingly, the doctrine usually applies only when a plaintiff explicitly

---

[6] Although Chase and Freddie Mac joined the FDIC as a necessary party pursuant to Fed. R. Civ. P. 19(a), Dixon did not assert any claims or counterclaims against the FDIC at the summary judgment proceedings or on appeal herein. Therefore, our discussion will be limited to Dixon's claims against Chase and Freddie Mac only. *See In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010) (citation omitted) (holding that arguments not presented in Appellant's opening brief are waived); *see also XL Specialty Ins. Co. v. Kiewit Offshore Services, Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) (citation omitted)(holding that an argument not raised before the district court cannot be asserted for the first time on appeal).

No. 12-40590

attacks the validity of a state court's judgment, though it can also apply if the plaintiff's federal claims are so inextricably intertwined with a state judgment that the federal court 'is in essence being called upon to review the state court decision.'" *Guy*, 682 F.3d at 390-91 (citations omitted).

The *Rooker-Feldman* doctrine does not apply, however, when the party against whom the doctrine is invoked was not a party to the underlying state court proceeding. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994)). Additionally, this court has recognized that "the doctrine has no application to a federal suit brought by a nonparty to the state suit, nor does it preclude a party from litigating an independent claim, even one that denies a legal conclusion previously reached by a state court." *In re Knezek*, 370 F. App'x 449, 452 (5th Cir. 2010) (per curiam) (unpublished) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

Originally, the district court entered a Final Judgment nullifying the state court default judgment against WaMu. However, on the motion of Appellees, the district court amended that judgment and rendered an Amended Final Judgment removing the "nullified" language and substituting language indicating Freddie Mac's superior title to the Property and removing the cloud created by the state court default judgment. Accordingly, the district court did not ultimately nullify the state court default judgment.[7]

Moreover, Chase and Freddie Mac were non-parties to Dixon's suit against WaMu, therefore, the *Rooker-Feldman* doctrine is inapplicable to bar their declaratory judgment action in the proceedings below. *See Lance*, 546 U.S. at 464; *In re Knezek*, 370 F. App'x at 452. Further, as pointed out by Appellees, the

---

[7] Additionally, as stated *infra*, on June 2012 the Texas state court granted summary judgment in favor of the FDIC and vacated the April 28, 2010 default judgment against WaMu. *See FDIC, as receiver for Wash. Mut. Bank, v. Dixon*, No. 11-cv-0690 (June 8, 2012).

declaratory judgment action did not seek to nullify the state court default judgment. Rather, it sought to have Freddie Mac's title to the Property declared superior to Dixon's and to have the cloud created by the state court default judgment removed. Accordingly, we hold that the district court's judgment was not rendered in violation of the *Rooker-Feldman* doctrine. *Id.*

### B. Validity of the Foreclosure Proceedings

Next, Dixon challenges the validity of the foreclosure proceedings as conducted by Chase. Dixon claims that Chase has failed to prove chain of title to the Note and the deed of trust evidencing that it had the right to foreclose on the Property. We disagree.

The record shows that Chase entered into the P&A Agreement with the FDIC and thereby agreed to purchase all loans and loan commitments of WaMu. Dixon does not dispute that his loan was formerly serviced by WaMu before it was placed in receivership and its assets (including all loan commitments) were subsequently acquired by Chase. Nor does Dixon dispute that he was notified by Chase in 2008 that it was the replacement mortgagee and servicer of Dixon's loan.

Moreover, as we have previously held, "the chain of assignments is itself sufficient to establish standing to foreclose, even without the original note." *Wheeler v. JP Morgan Chase Bank, N.A.*, No. 4:13–cv–364, 2013 WL 3965304, at *3 (S.D. Tex. Aug. 1, 2013) (citation omitted)). Here, contrary to Dixon's allegations, Chase has provided sufficient documentation demonstrating that it acquired Dixon's loan by purchasing from the FDIC the loan commitments of WaMu that were placed into the receivership after WaMu was declared insolvent - and that WaMu was the successor in interest to PNC - the original party with whom Dixon executed the deed of trust. Any misunderstandings Dixon may have about the chain of assignments are not supported by Dixon's arguments on appeal or the record.

No. 12-40590

Additionally, the record indicates that Chase provided the required notices to Dixon prior to the foreclosure proceedings. Contained in the record is the notice of default and opportunity to cure that was provided to Dixon in 2008, as is the note of acceleration along with notice of sale in 2010. The dates on these notices indicate that Chase complied with the terms of the deed of trust (requiring 30 days notice prior to acceleration) as well as the notice requirements set forth in the Texas Property Code (requiring 20 days notice prior to acceleration). *See* Tex. Prop. Code § 51.002(d). We are not persuaded by Dixon's argument that the two year lag time between the 2008 default notice and the 2010 notice of acceleration somehow invalidated the foreclosure proceedings.

More significantly, however, Dixon has failed to provide evidence that he retained valid title to the Property or that his title, if valid, is superior to that of Appellees. *See Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.) (citation omitted) (holding that a plaintiff "must prove and recover on the strength of his own title, not the weakness of his adversary's title."). Dixon's ultimate and continuing default on the Note payments, in and of itself, constituted a breach of the terms of the Note and the deed of trust which effectively negated any potential ownership or valid title he could have held to the Property.

Accordingly, we hold that the district court did not err in rendering judgment in favor of Appellees as to the propriety of the foreclosure proceedings, Freddie Mac's superior title to the Property, and the removal of the cloud on the title resulting from the recordation of the (now vacated) state court default judgment.

*C. Dixon's Due Process Arguments*

Dixon's counterclaims against Appellees in the summary judgment proceedings included allegations of trespass to title and suit to quiet title, slander of title, wrongful foreclosure, tortious interference, alter ego and single

business enterprise, and fraud.  Dixon asserts on appeal that his due process rights were violated when the district court summarily dismissed his counterclaims without hearing or explanation.  We do not agree.

As this court has held, under Rule 56, a district court's dismissal of counterclaims because they fail as a matter of law based on the undisputed facts is appropriate.  *See Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 451-52 (5th Cir. 2012) (per curiam) (unpublished) (citing Fed. R. Civ. P. 56).  While it is true that Rule 56 provides that a "court should state on the record the reasons for granting or denying the motion," Dixon cites no authority in this circuit or otherwise mandating the degree to which a summary judgment opinion should be detailed.  *Id*. at 451-53 (holding that the district court did not err by entering final judgment "summarily dismiss[ing] Defendants' counterclaims for 'breach of contract, bad faith and/or deceptive trade and/or claims or settlement in violation of the applicable law'").  Here, the district court stated that it considered the motion for summary judgment, the briefs in support and in opposition, the related documents, and the arguments attendant.  The memorandum opinion further stated that the material facts were not in dispute and that Dixon's "opposition to Chase Bank's case in chief, and his counterclaims, [were] unmeritorious."  Neither the record nor the district court's judgment or memorandum opinion indicate that Dixon was deprived of the right to have his claims heard.  *Id*.  Consequently, we hold that Dixon's due process arguments fail.

Further, in light of our holding that the district court did not err in rendering summary judgment in favor of Appellees with regard to validity of the foreclosure proceedings and Freddie Mac's superior title to the Property, we pretermit discussion of the following arguments advanced by Dixon on appeal: (1) trespass to title and suit to quiet title; (2) slander of title; (3) wrongful foreclosure; (4) tortious interference; and, (5) fraud.

No. 12-40590

Finally, we also hold that Dixon's counterclaim of alter ego and single business enterprise fails. As this court has stated, in determining whether an alter ego relationship exists, it must first decide whether the "two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *J. Vallery Elec., Inc. v. NLRB*, 337 F.3d 446, 451 (5th Cir. 2003) (citation omitted). Second, the court "must gauge whether there was an unlawful motive behind the creation of the new business entity, determining whether there was a 'disguised continuance' or 'attempt to avoid the obligations of [an existing] . . . agreement through a sham transaction or technical change in operations.'" *Id.* (citation omitted).

As we have stated, the record clearly indicates that Chase acquired certain assets, including all loans and loan commitments that were formerly serviced by WaMu, after WaMu was declared insolvent and placed into a receivership with the FDIC. Chase notified Dixon of the changes, including the fact that WaMu had been closed by the Office of Thrift Supervision and the FDIC and that Chase would be the replacement mortagee and servicer for Dixon's loan. Chase even explained to Dixon that Chase would continue to service Dixon's loan under WaMu's name for purposes of convenience during the transitionary period after which Chase acquired WaMu's assets, but that after that time, the name "WaMu" would no longer be used. As pointed out by the district court, while Dixon may not have fully understood the transfer process, his confusion does not undermine the validity of the transfer. Nor does it support a finding by this court that an alter ego relationship was formed between Chase and WaMu when Chase acquired WaMu's assets after its insolvency. *See J. Vallery Elec., Inc.*, 337 F.3d at 451.

11

No. 12-40590

## III.

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of Appellees, Chase and Freddie Mac, dismissing in total Dixon's claims and counterclaims.