PER CURIAM:
Abdul and Hajera Khan filed this lawsuit under 42 U.S.C. § 1983 for claims arising out of their son’s death. The district court granted summary judgment on the basis of qualified immunity against their claims that law enforcement personnel used excessive force in restraining him. The Khans appealed and argue that the use of a four-point restraint in this case was excessive force and the defendants were not entitled to qualified immunity. We AFFIRM.
I.
Late on July 17, 2007, Nayeem Khan, who suffered from a mental illness, began running around inside a Winn-Dixie store at closing time and screaming that people outside were trying to kill him. The store’s private security guard asked repeatedly that Khan stop, and store employees called for the police. In the meantime, the security guard and an off-duty deputy subdued and handcuffed Khan with his hands in front of his body.
Arriving on the scene, the police officers escorted Khan out of the Winn-Dixie. Khan forcefully resisted his removal from the store; thrashing his legs; attempting to bite; and, according to one officer, reaching for an officer’s gun belt. Outside the store, the officers moved the handcuffs to behind his body, and Khan continued to thrash and kick. The officers then hobbled his legs and linked the leg irons and handcuffs with an additional set of handcuffs into a four-point restraint.[1] Almost immediately thereafter, the officers noticed Khan stopped breathing. The officers removed the hand and leg restraints and administered CPR until an ambulance arrived. Khan began to breathe again by the time he arrived at the hospital, but he died later that night.
Khan’s parents sued the police officers, alleging constitutional claims for excessive force under 42 U.S.C. § 1983 and state tort claims. Under step one of the quali *194 fied immunity analysis, the district court concluded that the officers did not use excessive force. In doing so, the district court compared the facts in this case to those in two Fifth Circuit cases involving four-point restraints and claims of excessive force. See Hill v. Carroll Cnty., 587 F.3d 230 (5th Cir.2009); Gutierrez v. City of San Antonio, 139 F.3d 441 (5th Cir. 1998). The district court dismissed the federal claims for excessive force, and then declined to exercise supplemental jurisdiction over the remaining state law claims. This appeal followed.[2]
II.
We review a grant of summary judgment de novo, applying the same standard as the district court. Time Warner Cable, Inc. v. Hudson, 667 F.3d 630, 638 (5th Cir.2012). When evaluating a motion for summary judgment, we view all disputed facts and inferences in favor of the nonmovant. Hill, 587 F.3d at 233. “The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
Qualified immunity protects government officials from money damages unless a plaintiff shows: (1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, — U.S.-, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). Courts “have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.” Id. Because the second prong is dispositive here, we begin our analysis with whether the right was clearly established.
To be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The appellants argue that a four-point restraint can sometimes amount to excessive force that is objectively unreasonable. See Gutierrez, 139 F.3d at 451. However, the use of a four-point restraint does not constitute excessive force per se. See Hill, 587 F.3d at 237. Therefore, we examine our case law to see whether the alleged unlawfulness of Khan’s treatment would have been apparent to a reasonable official. Anderson, 483 U.S. at 640, 107 S.Ct. 3034.
This court has held that a four-point restraint in a “limited set of circumstances” may constitute excessive force. Gutierrez, 139 F.3d at 451. In Gutierrez, the police officers approached Rene Gutierrez shortly before midnight as he was running in circles in the middle of the street, and he told the officers that he had “shot some bad coke.” Id. at 443. Gutierrez became violent when placed in an EMS unit headed for a hospital, and the officers ultimately placed him in a four-point restraint with his “legs backward at a 90-degree angle in an ‘L’ shape” and drove him to the hospital in the patrol car while he was face down in the back seat. Id. Ten minutes into the drive, Gutierrez stopped struggling, and by the time they arrived at the hospital, Gutierrez had no pulse and was pronounced dead. Id. This court reversed summary judgment in favor of the officers with a “very limited” hold *195 ing that “hog-tying may present a substantial risk of death or serious bodily harm only in a limited set of circumstances.” Id. at 451. In doing so, the court emphasized the dangers of “hog-tying a drug-affected person in ‘cocaine psychosis’” and distinguished other circuits that held the use of four-point and similar restraints to be objectively reasonable. Id. at 444, 450-51.
Eleven years after Gutierrez, this court affirmed summary judgment that a four-point restraint was not objectively unreasonable force. See Hill, 587 F.3d at 287. In Hill, the police responded to a fight between two women. Id. at 282. One of the women, Debbie Loggins, left the brawl to tackle and “pummel[ ]” a police officer. Id. Loggins, weighing 220 pounds, continued to kick and curse after being handcuffed, hobbled, and eventually placed in a four-point restraint. Id. at 232-33. The officers then placed the still struggling Loggins face down in back of the patrol car for the twenty-nine mile drive to the jail. Id. at 233. Arriving at the jail thirty minutes later, the police discovered that Loggins was unresponsive with no pulse, and she was soon pronounced dead. Id. The Fifth Circuit affirmed summary judgment because the plaintiff “failed to develop a material fact issue that the deputies’ use of four-point restraints was unnecessary, excessively disproportionate to the resistance they faced, or objectively unreasonable in terms of its peril.” Id. at 237.[3]
We hold that Khan’s treatment did not violate a clearly established right. Unlike in Hill, Khan was not left face down in the four-point restraint for an extended period of time. Moreover, Khan remained under constant supervision, which allowed the officers to remove the handcuffs and administer first aid quickly after he stopped breathing. The fact that this court affirmed summary judgment in Hill makes it difficult to establish that Khan’s restraint violated a clearly established right. See Hill, 587 F.3d at 237.
Nevertheless, the dissent contends that the “very limited” holding in Gutierrez renders the officers’ conduct here a violation of a clearly established right. This is incorrect for at least three reasons. First, the brevity of Khan’s restraint and the constant supervision similarly distinguish this case from Gutierrez. Indeed, Gutierrez explicitly based its holding on the officers’ failure to monitor the decedent during the extended car ride, “facts bearing heavily against the officers [that] are not in dispute.” Gutierrez, 139 F.3d at 449. See id. at 451 (“Based on the disputed facts and undisputed facts not favoring the officers, we cannot determine whether their conduct was objectively reasonable.”). Second, in determining that hog-tying “may present a substantial risk of death or serious bodily harm” to certain drug-affected people, Gutierrez relied primarily on a study that (as this court subsequently noted) has been called into question by more recent scholarship. Hill, 587 F.3d at 235 (stating that Gutierrez “does [not] extend beyond its facts as a mirror of the then-unchallenged San Diego Study” and observing “[a] more recent study by Dr. Tom Neuman casts doubt on the conclusions of the San Diego Study”).[4] Third, *196 even assuming the research in Gutierrez accurately depicts the dangers of four-point restraints for someone in a drug-induced psychosis, Gutierrez dealt with officers who knew the decedent had — as he told the officers — “shot some bad coke.” Gutierrez, 139 F.3d at 449 (“Viewing these disputed facts in the light most favorable to Gutierrez, the summary judgment record shows that the officers knew that Gutierrez was under the influence of drugs .... ”). The record contains no similar knowledge by the officers in the field, despite the subsequent autopsy report that found methamphetamine in his system, and there is evidence that the officers thought Khan may have been suffering from a mental illness, just as the complaint alleges. Under our precedent in Hill and Gutierrez, we cannot say that there has been a violation of clearly established law.
Although this is a tragic incident, police officers must often make split-second decisions, and qualified immunity shields them from subsequent second-guessing unless their conduct was objectively unreasonable under clearly established law. Wagner v. Bay City, Tex., 227 F.3d 316, 321 (5th Cir.2000). Consequently, the defendants are protected by qualified immunity even if their conduct constituted excessive force.[5]
AFFIRMED.

. "This type of restraint, binding the arms and legs together behind the back with an additional set of handcuffs, is also known colloquially as 'hog-tying.' " Hill v. Carroll Cnty., 587 F.3d 230, 232 n. 1 (5th Cir.2009). The government points out that most of the testimony and several undisputed facts suggest that the officers never linked the handcuffs and leg irons. However, the district court found that one officer’s testimony is to the contrary, creating a factual dispute that must be resolved in favor of the plaintiffs at this stage of the proceedings. Consequently, we assume that the officers placed Khan in the four-point restraint.

. Although the Khans initially sued the Jefferson Parish Sheriff and thirteen law enforcement officers, the plaintiffs only challenge on appeal the summary judgment as to seven of the deputies: Tim Stierwald, S. Trapani, R. Marx, D. Diondolillo, J. Alvarado, R. Dykes, and K. Richardson.

. Judge Stewart concurred in the result only and “would [have held] that on the record before us, the individual sheriff's deputies did not violate 'clearly established’ constitutional rights ... in the manner in which they subdued and transported her, and they are therefore shielded by qualified immunity even if they erred in using excessive force in the first instance.” Hill, 587 F.3d at 232 n. *.

. Gutierrez itself acknowledged that some more recent scholarship contradicted its holding — to the point that the author of the earlier studies had since conceded that hog-tying is "physiologically neutral” — but would not con *196 sider that research because it "is not part of the summary judgment record in this case.” Gutierrez, 139 F.3d at 451. In fact, Gutierrez cites to Dr. Reay's studies to support the supposed dangers of hog-tying, id. at 448, while later observing that those same studies had been called into question and Dr. Reay himself had changed his position, id. at 451. See Price v. San Diego, 990 F.Supp. 1230 (S.D.Cal.1998) ("After Dr. Reay’s retraction, little evidence is left that suggests that the hogtie restraint can cause asphyxia. All of the scientists who have sanctioned the concept of positional asphyxia have relied to some degree on Dr. Reay's work. The [University of California at San Diego Medical Center] study has proven Dr. Reay’s work to be faulty, which impugns the scientific articles that followed it. Like a house of cards, the evidence for positional asphyxia has fallen completely.”).

. The dissent contends that the officers’ decision to remove Khan from the store at closing time created the need for force and was objectively unreasonable given Khan’s fear of people outside trying to kill him. The record shows that Khan needed to leave Winn-Dixie because the store was closing and Khan was not cooperating with store security. In hindsight, one could argue that Khan would not have panicked again had he remained in the store, away from those he feared were trying to kill him. Yet the officers on the scene did not enjoy our "20/20 vision of hindsight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Moreover, the dissent points to no case indicating that removing Khan from the store would violate clearly established law.