HAYNES, Circuit Judge,
concurring and dissenting:
Wayne Pratt received the death penalty at'the hands of three police officers for the misdemeanor crime of failing to stop and give information. The majority opinion concludes that the deputies’ decision to hog-tie Pratt and apply force to his back while he was in this position was a reasonable response to Pratt’s failure to stop and identify himself following an accident and his failure to comply with their instructions. Qualified immunity “protect[s] police officers from the sometimes hazy border between excessive and acceptable force,” Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citation omitted), but here, the border is not hazy. Qualified immunity cannot be interpreted to license officers to use deadly force under these facts. Because it was clearly established that officers in Deputies Wilks, Goldstein, and Salazar’s position should not have hog-tied Pratt in the manner they did, I respectfully dissent from the portion of the majority opinion affirming the district court’s grant of summary judgment on qualified immunity grounds for Deputies Wilks, Goldstein, and Salazar’s alleged use of excessive force in hog-tying Pratt. I concur in the remainder of the judgment.
I
When confronting a claim' of qualified immunity, a court asks two questions: (1) whether the officer in fact violated a constitutional right, and (2) whether the contours of the right were “sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Supreme Court emphasized in Tolan v. Cotton that, in answering these questions, “courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.” - U.S. -, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (citing Brosseau v. Haugen, 543 U.S. 194, 195 n. 2, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). Rather, “a court must view the evidence ‘in the light most favorable to the opposing party.’” Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).
Here, plaintiff contends that Deputies Wilks, Goldstein, and Salazar violated the Fourth Amendment’s prohibition on unreasonable seizures by using excessive force in detaining Pratt. “The inquiry into whether [the Fourth Amendment] right was violated requires a balancing of ‘the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the importance of the governmen *187 tal interests alleged to justify the intrusion.’ ” Id. at 1865-66 (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). “This balancing ‘requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.’ ” Lytle v. Bexar Cty., 560 F.3d 404, 411 (5th Cir.2009) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). With respect to the “clearly established” prong of the qualified immunity analysis, “[t]he salient question ... is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.” Tolan, 134 S.Ct. at 1866 (citation omitted).
A
The majority opinion does not reach the second prong of the qualified immunity analysis because it concludes that, in the factual context of this case, the use of the hog-tie restraint was not unconstitutionally excessive or unreasonable. In particular, the majority opinion points to the fact that Pratt “ignored multiple requests and warnings” from the officers and “aggressively evaded their attempts to apprehend him, even after promising compliance.” The majority opinion fails, however, to balance the officers’ use of what amounted to deadly force against the relatively weak interest the officers had in apprehending Pratt.
We have already concluded that the use of a hog-tie restraint in certain circumstances constitutes the use of deadly force. Deadly force has been defined as force that “carries] with it a substantial risk of causing death or serious bodily harm.” Gutierrez v. City of San Antonio, 139 F.3d 441, 446 (5th Cir.1998) (quoting Robinette v. Barnes, 854 F.2d 909, 912 (6th Cir.1988)). In Gutierrez, we concluded that hog-tying may create a substantial risk of death or serious bodily injury when combined with drug use, positional asphyxia, and cocaine psychosis. Id. at 446-47. Those circumstances were present here. Although the officers did not know with certainty at the time of their encounter with Pratt that he was suffering from cocaine psychosis, they had sufficient information to lead them to suspect that he was intoxicated with some kind of unknown substance. When they first arrived at the scene, Pratt was running in circles, flailing his arms above his ahead, and claiming he was on fire, and Deputy Goldstein found a glass pipe and lighter in Pratt’s hands after he was handcuffed but before he was hog-tied. Despite this evidence, Deputy Wilks placed Pratt in a hog-tie restraint, with assistance from Deputy Goldstein, while Pratt was in a prone position. Officer Salazar simultaneously kneeled on Pratt’s back to restrain him, thus applying pressure that further impaired Pratt’s ability to breathe. Accordingly, to justify the use of such deadly force, the officers must have had “probable cause to believe that [Pratt] pose[d] a threat of serious physical harm, either to the officer or to others.” Garner, 471 U.S. at 11, 105 S.Ct. 1694. “Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.” Id.
At oral argument, the only crime that counsel for the County could identify as having been violated by Pratt was the failure to stop and give information — a misdemeanor violation under the Texas Transportation Code. See Tex. TRANSP. Code § 550.022. It is undisputed that *188 Pratt was running around the neighborhood behaving erratically and was refusing to comply with the officers’ instructions. The officers noted that Pratt was not acting normally and appeared to be having some kind of mental or agitated episode, and they even suspected that he was intoxicated on some unknown substance. But at no point during the encounter did any of the deputies suspect that Pratt was armed with any kind of weapon. The only threat Pratt posed to the officers was at most a relatively mild, threat of physical violence — one officer testified that Pratt turned toward an officer in an aggressive manner early in the officers’ encounter with Pratt. Additionally, Pratt kicked Deputy Goldstein in his thigh/groin area after the officers had restrained Pratt’s hands and placed him on the ground. However, at the time the officers applied the hog-tie restraint, they had been able to compel Pratt’s compliance with the use of a taser and Pratt subsequently stated that he would cease resisting. There is no indication in the record that Pratt posed an immediate threat to anyone other than the officers, no “Manis act” that would justify the use of deadly force. See Cole v. Carson, 802 F.3d 752, 760-61 (5th Cir.2015) (“The act justifying deadly force is sometimes called a Manis[1] act. We have found qualified immunity was inappropriate due to the absence of a Manis act....” (footnote omitted)). Thus, there exists at-least a fact dispute as to whether Pratt presented any threat of harm to the officers, much less a threat of serious physical harm at the time the officers applied the hog-tie restraint.
Recent Supreme Court cases addressing the Fourth Amendment right to be free from the use of excessive force provide guidance regarding how to conduct the balancing analysis. For example, in Mullenix v. Luna, — U.S. -, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015), the Court focused on the fact that the suspect was a “reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer,” id. at 309. The Court held that the officers’ use of deadly force in attempting to stop the suspect’s high-speed car chase did not violate clearly established law. Id. at 312. Similarly, in City and County of San Francisco v. Sheehan, — U.S. -, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015), the Court held that officers did not violate the Fourth Amendment in using potentially deadly force where the officers knew that the suspect “had a weapon and had threatened to use it to kill three people,” the officers had unsuccessfully attempted to subdue the suspect with pepper spray, and the suspect was only a few feet from a cornered officer, id. at 1775. In Plumhoff v. Rickard, — U.S.-, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014), the Court held that the officers’ use of deadly force did not violate the Fourth Amendment where the officers fired 15 shots in an attempt to end a car chase that had “exceeded 100 miles per hour and lasted over five minutes,” during which the suspect “passed more than two dozen other vehicles, several of which were forced to alter course,” concluding that the car chase “posed a grave public safety risk,” id. at 2021. The Court emphasized that the suspect posed an actual and imminent threat to pedestrians and other motorists, as well as to the officers involved in the chase.[2] Id. at 2021-22.
*189 In each of these cases, the officers faced an immediate threat of serious harm, as did others who might come into contact with the individual in question. Conversely, in the instant case, there is no indication that Pratt ever posed a serious threat of harm to any of the officers, nor any indication that the officers feared for then-safety in any meaningful way that might justify the use of deadly force. This is not the “split second” decision described in the concurring opinion. Thus, balancing Deputies Wilks, Salazar, and Goldstein’s use of deadly force against the importance of the government’s interests alleged to justify the intrusion leads inexorably to the conclusion that the deputies’ alleged use of force in this case was excessive and constitutes a violation of Pratt’s Fourth Amendment rights.[3]
B
With respect to the second prong of the qualified immunity analysis, viewing the *190 facts in the light most favorable to the plaintiff, it is apparent that the officers’ actions in using excessive force violated clearly established law. As of May 10, 2010, the date on which the events in this case occurred, the Fifth Circuit had decided two cases directly addressing whether the use of hog-tie restraints constitutes excessive force in violation of the Fourth Amendment: Gutierrez and Hill v. Carroll Cty., 587 F.3d 230 (2009).
As discussed previously, in Gutierrez, we held that placing a “drug-affected” ar-restee in a hog-tie restraint constituted excessive force where hog-tying in addition to drug use, positional asphyxia, and cocaine psychosis was present. 139 F.3d at 444, 446^17. Gutierrez presents nearly identical facts to the facts of this case. In Gutierrez, police officers approached an individual who was running in circles in the middle of a heavily trafficked intersection and claiming that he had been shot. Id. at 442-43. The officers found no bullet wounds on the individual, nor did they see anyone with a gun nearby. Id. at 443. The officers suspected that he was intoxicated, noting that his eyes were glassy, his gait was unsteady, and his speech was slurred. Id. at 442-43. The individual confirmed upon questioning that he had “shot some bad coke.” Id. at 443. The officers called an ambulance for possible toxic ingestion overdose, but when the ambulance arrived, the individual became violent. Id. He kicked one of the officers in the chest and refused to get in the ambulance. Id. At this point, the officers placed him in a hog-tie restraint in a prone position in the backseat of a patrol car so they could transport him in the patrol car to the hospital. Id. Upon arriving at the hospital, the individual no longer had a pulse and was pronounced dead shortly thereafter. Id. We reversed summary judgment on qualified immunity grounds in favor of the officers, holding that material fact disputes existed on the question of whether the officers used reasonable force. Importantly, we found that, assuming the evidence regarding the risk of death posed by hog-tying to be true, “hog-tying in [those] circumstances would have violated law clearly established prior to November 1994.” Id. at 447.
In Hill v. Carroll Cty., we again addressed whether hog-tying constituted excessive force under the Fourth Amendment. In Hill, police officers responded to a fight between two women. 587 F.3d at 232. One of the women turned her attention away from the fight to tackle one of the officers, pummeling him with a flashlight. Id. Eventually the officer managed to handcuff the woman’s wrists behind her back. Id. He retrieved leg restraints from his patrol car and attached them, but the woman continued to kick, twist, and otherwise resist the officers as they tried to load her into the patrol car. Id. The officers then placed her in a hog-tie restraint, put her in the back of the patrol car, and drove her to a courthouse, where they transferred the woman to another officer’s patrol car. Id. at 232-33. The woman was placed face down for the half-hour ride to the jail. Id. at 233. Upon arrival, she no longer had a pulse and was thereafter pronounced dead. Id. We concluded that no reasonable jury could find that the deputies used excessive force to subdue the woman. Id. at 234. We distinguished Gutierrez on the ground that in Hill, there was no evidence of drug abuse or drug-induced psychosis, nor was there evidence that pressure had been placed on the back of the hog-tied individual. Id. at 235-36. Additionally, we noted that the police were called because the woman was in a fight with another individual, and that she assaulted the officer with his own flashlight when he tried to restrain her. Id. at 237. Furthermore, the officers tried *191 to put her in a squad car after restraining her hands and legs to no avail, and only then resorted to a hog-tie restraint. /A[4]
The facts of this case fall squarely under the holding in Gutierrez.[5] Here, the officers had reason to suspect that Pratt had abused drugs based on his erratic behavior, and the presence of a glass pipe and lighter in his hands takes this from mere unexplained erratic behavior into the “on drugs” camp.[6] Furthermore, Pratt was unarmed and posed a relatively little risk of harm to the officers despite his refusal to comply with their commands. At no point did Pratt attempt any kind of violence other than kicking at the officers while he was on the ground. Pratt never attempted to reach for the officers’ weapons, nor did he pose any other threat of serious harm to the officers. Additionally, the officers did not discover that Pratt had stopped breathing until after an ambulance arrived, and the amount of time Pratt was actually hog-tied is a disputed fact. Furthermore, distinct from the facts in Hill, the officers did not attempt to use leg restraints before placing Pratt in a hog-tie restraint. Most importantly, unlike Hill, the officers here used both the hog-tie restraint and put a knee on his back, greatly impairing his ability to breathe. See Hill, 587 F.3d at 236.[7]
In light of the holding in Gutierrez and the similarities between it and the instant case, the state of the law at the time of the incident was sufficiently established to provide fair warning to Deputies Wilks, Salazar, and Goldstein that their alleged conduct violated Pratt’s Fourth Amendment right to be free from the use of excessive force.
Accordingly, I respectfully dissent from Part III.A.2 of the majority opinion affirming the district court’s grant of summary judgment on qualified immunity grounds with respect to the plaintiffs excessive force claim against Deputies Wilks, Gold-stein, and Salazar for their use of the hogtie restraint. I would reverse and remand as to those claims. As to plaintiffs other claims, I concur in the disposition set forth in the majority opinion.[8]

. Manis v. Lawson, 585 F.3d 839, 844-45 (5th Cir.2009) (Manis’s act of reaching under the seat of the vehicle in what looked like a grab for a weapon was the "act” that justified the use of deadly force.).

. Conversely, in Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014), the Supreme Court reversed a panel of the Fifth Circuit that had affirmed a district court's grant of summary judgment on qualified immunity grounds. The Court held that "the Fifth Circuit failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.’ ” Id. at 1863 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In Tolan, a police officer mistakenly accused two men of being in possession of a stolen vehicle after keying an incorrect character into the computer in his squad car. Id. He confronted the two men outside of the home where Tolan lived with his parents. Id. Tolan’s parents heard the commotion and exited the front door in their pajamas, insisting that the vehicle was not stolen. Id. An additional officer arrived and instructed Tolan’s mother to stand against the family’s garage door. Id. at 1863-64. Tolan and his mother testified that the officer grabbed her arm and slammed her against the garage door with enough force to leave bruises on her arms and back. Id. at 1864. Seeing this, Tolan rose to his knees and shouted an expletive, demanding that the officer leave his mother alone. Id. The officer then drew his pistol and fired three shots at Tolan with no verbal warning. Id. The Supreme Court remanded the case to the Fifth Circuit to correctly credit Tolan’s evidence and determine whether the officer’s actions violated clearly established law. Id. at 1868. On remand, the Fifth Circuit held that a genuine dispute of material fact existed as to whether the officer was entitled to summary judgment based on qualified immunity. Tolan v. Cotton, 573 Fed.Appx. 330, 330-31 (5th Cir.2014).

. With respect to the "directly and only” element of a claim of excessive force under the Fourth Amendment, I believe plaintiff has submitted sufficient evidence to raise a question of fact regarding whether Deputies Wilks, Goldstein, and Salazar's use of the hog-tie restraint caused Pratt’s death. First, no case has held that "directly and only” literally means that no other cause contributed to the death in question. Counsel for both parties conceded during oral argument that they could not find a case in which the term "only” was relied upon to preclude recovery in a situation such as the instant one, where Pratt’s death allegedly resulted from multiple factors, but where the plaintiff has presented expert testimony stating that Pratt would not have died but for being hog-tied and having pressure placed on his back while in a prone position. We have explained that a plaintiff need not present evidence that a defendant’s excessive use of force was the exclusive cause of the alleged injury — rather, “so long as the injury resulted from 'clearly excessive and objectively unreasonable' force, [the plaintiff’s] claim is actionable.” Bailey v. Quiroga, 517 Fed.Appx. 268, 268 (5th Cir.2013) (quoting Mouille v. City of Live Oak, 918 F.2d 548, 553 (5th Cir.1990)). Here, the record indicates that the hog-tying was the last act of restraint before Pratt went into cardiac arrest and ceased breathing. The plaintiff’s expert opined that, but for the prone restraint, Pratt would not have died when he did. This evidence at least creates a fact issue as to causation.

. The third case involving hog-tying, Khan v. Normand, 683 F.3d 192 (2012), had not been decided at the time of the events at issue in this case. Accordingly, it cannot relied upon to assess what law was clearly established at the time of the dispute. That case is also distinguishable because in that case, the detainee, while resisting, reached for the officer’s gun. Id. at 193. Under Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), our court in Khan reached only the second prong of the qualified immunity analysis — whether the officers’ actions violated a clearly established right— and declined to address whether the officers’ conduct constituted excessive force. Khan, 683 F.3d at 194-95.

. To the extent that there is any dissonance among Gutierrez, Hill, and Khan, we are bound by the oldest case, Gutierrez, under our rule of orderliness. United States v. Broussard, 669 F.3d 537, 554-55 (5th Cir.2012). I thus disagree with the concurring opinion that Khan "binds us in assessing the state of that law in 2 010. ” Concurrence at 185.

. I disagree with the concurring opinion that the drugs had to be cocaine to fall within Gutierrez.

. Indeed, the absence of drugs and vertical pressure are the reasons the Gutierrez study was "discounted” in Hill: "Dr. Werner Spitz, Hill’s medical expert, also failed to provide the necessary evidence of the risks associated with four-point restraints. He relied heavily on the San Diego Study ... [but] admitted Loggins did not exhibit evidence of drug abuse or cocaine-induced psychosis, two critical factors in the San Diego Study. He conceded his own publication on positional asphyxia observes that when deaths occurred, the arresting officers had placed pressure on the back of the hog-tied prisoner. No vertical pressure was applied to Loggins.” Hill, 587 F.3d at 236 (emphasis added).

. The majority opinion disposes of plaintiffs supervisory and municipal liability claims on the ground that there are no underlying excessive force violations under the Fourth Amendment. Although, as discussed above, I would find that plaintiff has sufficiently alleged a constitutional violation with respect to Deputies Wilks, Goldstein, and Salazar's hogtying, I concur in the ultimate judgment that her municipal liability claim based on this conduct should be dismissed. To establish a claim for municipal.liability under § 1983, a plaintiff "must show the deprivation of a federally protected right caused by action taken ‘pursuant to an official municipal policy.’ ” Valle v. City of Houston, 613 F.3d 536, 541 (5th Cir.2010) (quoting Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Here, plaintiff has not sufficiently alleged the existence of an official policy. In fact, the record evidence shows that Harris County had a policy against using hog-tying as a method of restraint. Accordingly, plaintiff’s municipal ■ ■ liability claim based on the deputies’ hog-tying is appropriately dismissed.