# United States Court of Appeals
## For the First Circuit

No. 09-1816

IN RE: MANUEL E. NET-VELÁZQUEZ,

Debtor.

BANCO BILBAO VIZCAYA ARGENTARIA,

Defendant, Appellant,

v.

NOREEN WISCOVITCH-RENTAS, as Trustee for the Estate of
Manuel Enrique Net-Velázquez,

Plaintiff, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Barbadoro,[*] District Judge.

María S. Jiménez Meléndez, with whom Wanda I. Luna Martínez
and Montañez & Alicea Law Office were on brief, for appellant.
Noreen Wiscovitch-Rentas, with whom Enrique N. Vela Colón was
on brief, for appellee.

November 2, 2010

[*]Of the District of New Hampshire, sitting by designation.

**LIPEZ**, **Circuit Judge**. This appeal arises from a bankruptcy court adversary proceeding challenging Appellant Banco Bilbao Vizcaya Argentaria's (BBVA) garnishment of funds in the bank account of a corporation wholly owned by a Chapter 7 debtor and his wife. BBVA appeals the district court's affirmance of a bankruptcy court judgment in favor of the bankruptcy trustee, holding that BBVA's garnishment of funds was a preferential transfer of estate property avoidable under 11 U.S.C. § 547(b). BBVA seeks to argue in this court, under a number of theories, that ownership of the garnished funds was properly vested in the bank and not the debtor. Because BBVA neglected to squarely raise these arguments before the bankruptcy court, it has waived them and we therefore affirm.

## I.

In 2004, BBVA brought suit in a commonwealth court against Manuel Enrique Net-Velázquez, his wife, and an associated business partnership, resulting in an attachment in the amount of $300,000 on several parcels of real property owned by the couple. BBVA filed the attachment order in the Puerto Rico Registry of Property in June 2005.

In August 2005, Net-Velázquez and his wife sold one of the attached properties, a parcel located in Paseo de la Fuente, Puerto Rico. As it happened, the purchasers arranged for financing through BBVA. Though BBVA ordered a title report prior to the closing, the report omitted (for reasons that are in dispute and

not material here) BBVA's $300,000 attachment.  The personnel in charge of the financing at BBVA were apparently unaware of the attachment and remained so until after the closing.

Upon sale of the parcel, BBVA issued a manager's check to Net-Velázquez and his wife in the amount of $354,373.30, the entire proceeds of the sale.  Net-Velázquez, who admitted at trial that he was aware of the attachment order, may or may not have been surprised at the amount of the check and BBVA's failure to withhold any portion of the proceeds to satisfy its attachment, but he did not raise the issue with BBVA.[1]

Net-Velázquez and his wife deposited the check for $354,373.30 into a newly created bank account at a third-party bank.  The account was opened in the name of Code Inspector and Management Corp. (Code Inspector), a closely-held corporation created by the couple in 2004.  Net-Velázquez and his wife were the sole shareholders and officers of Code Inspector, and each had full control over the funds held in Code Inspector's bank account.

Two weeks after the closing, having belatedly become aware of the failure to withhold a portion of the Paseo de la Fuente sales proceeds to satisfy its attachment, BBVA garnished all

---

[1] Net-Velázquez testified at trial that he had previously sold another parcel subject to an attachment by BBVA, and in that transaction BBVA and the purchaser had directly negotiated to reduce the amount of the attachment.  Net-Velázquez said that when he received the check for the full proceeds from the sale of the Paseo de la Fuente parcel, he believed that some similar arrangement must have been reached.

of the available funds in the Code Inspector bank account.[2]  At the time, the account contained $351,383.10.  BBVA was unaware that the account was maintained in Code Inspector's name, believing it to be Net-Velázquez's personal account.[3]

In December 2005, Net-Velázquez filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code.  The bankruptcy schedules accompanying Net-Velázquez's petition listed the Code Inspector bank account as property of the bankruptcy estate.

## II.

The bankruptcy trustee responsible for the Net-Velázquez estate initiated this adversary proceeding against BBVA in September 2006, asserting that the bank's garnishment of funds in the Code Inspector bank account amounted to a preferential transfer

---

[2] The authority by which BBVA garnished the funds is not clearly disclosed by the record, but it appears that BBVA obtained, on an expedited basis, an order from a local court.

[3] A bank official testified that BBVA traced the account based upon the endorsed copy of the check returned to BBVA after deposit. Because Net-Velázquez did not sign the check over to Code Inspector but merely deposited the check into the corporate account, there was no indication of the account's ownership.

under 11 U.S.C. § 547(b).[4]  The trustee sought to recover the full $351,383.10 garnished by BBVA.[5]

The bankruptcy court held a bench trial in May 2008. After hearing testimony from Net-Velázquez and a representative of BBVA, the court ordered further briefing on the core issue that emerged at trial: whether Net-Velázquez had transferred his interest in the sales proceeds to Code Inspector by depositing them in Code Inspector's bank account, effectively removing those funds from the bankruptcy estate.  In an opinion and order issued on October 27, 2008, the court found that Net-Velázquez had retained ownership of the funds in the Code Inspector account, and therefore that BBVA's garnishment of funds constituted an avoidable, preferential transfer of property from the estate.

BBVA appealed to the district court, see 28 U.S.C. § 158(a)(1), arguing that the bankruptcy court had erred in finding

---

[4] Section 547(b) grants a bankruptcy trustee the power to invalidate so-called "preferential transfers" of property from the bankruptcy estate to a creditor within a ninety-day period prior to the filing of a bankruptcy petition.  The rationale for allowing such transfers to be recovered is one of fairness, as a creditor who receives property from the estate prior to bankruptcy may obtain, at the expense of other creditors, a greater share of estate property than the creditor would in bankruptcy.

[5] For clarity's sake, we note that the amount garnished was less than the full amount of the check issued by BBVA to Net-Velázquez ($354,373.30), as the balance of the Code Inspector account had declined to $351,383.10 at the time of the garnishment. The garnishment exceeded, however, the amount to which BBVA was entitled by virtue of the attachment ($300,000); BBVA has conceded that it had no right to the $51,383.10 garnished in excess of the $300,000 attachment.

that the funds in the Code Inspector bank account were owned by Net-Velázquez. BBVA also raised several new defenses under Puerto Rico's Negotiable Instruments Law, and argued as well that half of the proceeds from the sale of the Paseo de la Fuente parcel belonged to Net-Velázquez's wife and not to the estate. The district court affirmed, adopting the reasoning of the bankruptcy court and rejecting BBVA's newly asserted defenses as waived because BBVA had failed to raise them in the bankruptcy court. Responding to BBVA's remaining argument, the court held that the sale proceeds constituted community property of Net-Velázquez and his spouse and thus were properly included in the bankruptcy estate.

This timely appeal followed. We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo, granting no special deference to the intermediate decision of the district court on appeal. See Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 32 (1st Cir. 2009).

**III.**

Under section 547(b) of the Bankruptcy Code, the trustee of an estate in bankruptcy may avoid "'any transfer of an interest of the debtor in property' made (1) to a creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) during the 90-day period preceding the filing of the petition, which (5) allowed such creditor to receive more than it would have

-6-

under Chapter 7." Advanced Testing Techs., Inc. v. Desmond (In re Computer Eng'g Assocs.), 337 F.3d 38, 45 (1st Cir. 2003) (quoting 11 U.S.C. § 547(b)). The only contested element in this adversary proceeding is whether the garnished funds were "an interest of the debtor in property," that is, whether Net-Velázquez had a property interest in the funds on deposit in Code Inspector's bank account when they were garnished by BBVA.

In the proceedings before the bankruptcy court, BBVA sought to establish that Net-Velázquez had no property interest in the funds on the theory that the deposit into Code Inspector's bank account converted the funds from personal property subject to bankruptcy procedures into corporate property.[6] This contention placed BBVA in the somewhat awkward position of arguing that it had garnished funds from an entity that owed BBVA no debt. Indeed, BBVA necessarily conceded that, if its theory of the case were

_____

[6] BBVA also argued that $300,000 of the $354,373.30 check issued to Net-Velázquez was "earmarked" for BBVA to satisfy its attachment and thus that the garnishment was not a preferential transfer. The thrust of this "earmarking" argument is that the transfer to a debtor of funds that are "earmarked" for a third party does not vest ownership in the debtor; thus, the subsequent transfer of those funds to the third party for which they are earmarked will not constitute a preferential transfer of "an interest of the debtor in property." See Collins v. Greater Atl. Mortg. Corp. (In re Lazarus), 478 F.3d 12, 15 (1st Cir. 2007). The bankruptcy court rejected this argument, citing the absence of any evidence that BBVA had "earmarked" the funds transferred to Net-Velázquez and his wife. The court found, to the contrary, that Net-Velázquez had left the closing "cash-in-hand," with no restrictions on the sales proceeds imposed by BBVA. BBVA has not challenged this holding on appeal.

correct, Code Inspector might have a cause of action against BBVA. The bankruptcy court rejected this ill-advised argument, and BBVA does not challenge the bankruptcy court's holding here.

In fact, BBVA has wholly abandoned on appeal each of the arguments it made before the bankruptcy court. Instead of arguing that Net-Velázquez's deposit of the sales proceeds transferred ownership to Code Inspector, as it did below, BBVA offers here an array of new legal arguments contending that a valid property interest in the funds never even passed from BBVA to Net-Velázquez. First, BBVA raises a defense it styles "payment by mistake," contending that Net-Velázquez never obtained a right to the sale proceeds because the proceeds were transferred to him due to error -- namely, that BBVA failed to withhold funds sufficient to satisfy the attachment because that encumbrance was erroneously omitted from the title report. In support of this argument BBVA primarily relies on Article 1795 of the Puerto Rico Civil Code.[7] See P.R. Laws Ann. tit. 31, § 5121.

Second, BBVA offers a somewhat obscure argument under two sections of the Puerto Rico Civil Code that relate to the extinguishment of debt owed concurrently by two parties each to the

_____

[7] Article 1795 provides: "If a thing is received when there was no right to claim it and which, through an error, has been unduly delivered, there arises an obligation to restore the same." P.R. Laws Ann. tit. 31, § 5121. BBVA also relies on section 418(b) of the Negotiable Instruments Law, which extends the foregoing principle to financial instruments paid or delivered by mistake. See id. tit. 19, § 668.

-8-

other, referred to by BBVA as "set-off." See P.R. Laws Ann. tit. 31, §§ 3221, 3228. Under this theory, Net-Velázquez's obligation to BBVA was extinguished by operation of law upon the closing of the sale of the Paseo de la Fuente parcel, at which moment BBVA and Net-Velázquez each owed a debt to the other -- Net-Velázquez for the preexisting attachment, and BBVA, as the purchaser's financing agent, for the sale price. The thrust of this argument, never fully elucidated by BBVA, appears to be that the sale proceeds were automatically applied to the $300,000 attachment, and thus $300,000 of the $354,373.30 check issued to Net-Velázquez and his wife represented an overpayment to which they had no legal entitlement.

Third, BBVA argues, under several provisions of Puerto Rico's Negotiable Instruments Law, that BBVA had the right to rescind the manager's check issued to Net-Velázquez because Net-Velázquez did not take the instrument in good faith and therefore did not qualify as a holder in due course. See P.R. Laws Ann. tit. 19, §§ 451, 602, 605, 606. Fourth, BBVA contends that the Paseo de la Fuente parcel and the proceeds from its sale were "in custodia legis" (literally, in the custody of the law) at all points subsequent to the issuance of the attachment order, barring Net-Velázquez from obtaining a legal interest in the sale proceeds.

As set forth below, we hold that BBVA has forfeited its chance to be heard on these arguments never presented to the bankruptcy court.[8]

**IV.**

The proposition is well established that, "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); see also Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006) (collecting cases and describing the circuit's "echolalic regularity" in applying the waiver rule). Though sometimes severe in effect, this raise-or-waive rule "is founded upon important considerations of fairness, judicial economy, and practical wisdom." Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995).

It is undisputed that three of BBVA's arguments on appeal were not raised in the bankruptcy court and are subject to waiver: the "set-off" argument, the argument under Puerto Rico's Negotiable Instruments Law, and the characterization of the Paseo de la Fuente

---

[8] The fact that portions of the arguments presented here were raised before the district court has no impact on our analysis. The bankruptcy court acts as the trial court in bankruptcy proceedings. Thus, arguments must be presented in the bankruptcy court to be preserved; the district court acts solely as an intermediate appellate tribunal. See Evergreen Credit Union v. Woodman (In re Woodman), 379 F.3d 1, 3 n.1 (1st Cir. 2004).

parcel as "in custodia legis." BBVA protests, however, that it properly raised its fourth argument, the "payment by mistake" defense, by including it in its answer to the adversary complaint. We have closely examined BBVA's answer and find it, at best, debatable whether "payment by mistake" was actually raised as a defense. As it turns out, however, we need not resolve the question because of BBVA's subsequent inattention to the defense.

A defense or legal theory may not be preserved by bare reference in a pleading if it is thereafter abandoned until, freshly discovered on appeal, it is raised anew. Cf. DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001) ("Simply noting an argument in passing without explanation is insufficient to avoid waiver."). Save in exceptional cases, only those issues that are squarely presented and litigated in the trial court may be raised on appeal. See Iverson, 452 F.3d at 102 (litigants must "spell out their legal theories face-up and squarely in the trial court" to avoid waiver). Indeed, the Rules of Civil Procedure are structured to winnow the issues presented by the pleadings as a case progresses, so that only relevant, non-frivolous theories and defenses reach trial and are preserved for our review. Rule 16 in particular encourages the parties and the court, through the pretrial conference process, to "formulat[e] and simplify[] the issues, and eliminat[e] frivolous claims or defenses." Fed. R. Civ. P. 16(c)(2)(A). Because the resulting pretrial order issued

under Rule 16 is "intended to shape the contours of the ensuing trial by setting forth the legal theories upon which the parties intend to rely," Correa v. Hosp. San Francisco, 69 F.3d 1184, 1195 (1st Cir. 1995), claims or defenses omitted from the pretrial order are waived, whether or not properly raised in the pleadings. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 774 (1st Cir. 2010).

Here, the record reflects that BBVA failed to pursue or even raise the "payment by mistake" defense at any point subsequent to its answer. The parties' joint pretrial report contained no mention of BBVA's "payment by mistake" defense, identifying only two legal theories that BBVA intended to present at trial: first, that the ownership of the sales proceeds passed to Code Inspector upon their deposit in its bank account, and second, that the sales proceeds were "earmarked" for BBVA when transferred to Net-Velázquez, and thus were outside the action of 11 U.S.C. § 547(b).[9] No argument in support of a "payment by mistake" defense was made at the subsequent trial, nor was one included in BBVA's post-trial briefing on ownership of the sales proceeds -- which focused solely on the argument that Code Inspector was the rightful owner of the funds. Thus, even assuming BBVA did plead the substance of its "payment by mistake" defense in the answer, such defense was unambiguously waived for want of prosecution.

---

[9] See supra note 6.

BBVA's last-ditch argument seeks to cast this appeal as the "exceptional case" warranting relief from waiver. It is true that the rule of waiver for arguments not squarely presented below "is a matter of discretion" and "admits of an occasional exception." Harwood, 69 F.3d at 627. The bar, however, is high for such an exercise of discretion; a new argument will be considered on appeal only when "the equities heavily preponderate in favor of such a step." Id.

We have applied various criteria to aid in identifying the exceptional case where relief from waiver is appropriate. A nonexhaustive list of factors relevant to this determination includes: (1) whether the litigant's failure to raise the issue has deprived the court of appeals of useful factfinding, or whether the issue was of a purely legal nature; (2) whether the omitted argument raises an issue of constitutional magnitude; (3) whether the argument was highly persuasive and failure to reach it would threaten a miscarriage of justice; (4) whether considering the issue would cause prejudice or inequity to the adverse party; (5) whether the failure to raise the issue was inadvertent and provided no tactical advantage; and (6) whether the issue implicates "matters of great public moment," id. at 628. See Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 48-49 (1st Cir. 2009); Harwood, 69 F.3d at 627-28.

Of those criteria, a few seem to weigh slightly in BBVA's favor here.  First, BBVA's newly raised arguments are largely legal in nature, and thus BBVA's failure to raise them below does not appear to have substantially "deprived the court of appeals of useful factfinding."  Harwood, 69 F.3d at 627.  Second, allowance of the arguments would present "no special prejudice or inequity to the plaintiffs," other than possibly to further protract litigation that has now drawn on for over four years.  Id. at 628.  Third, the omission of the arguments below appears attributable to inadvertence rather than a play for tactical advantage by BBVA.  See id.

On the other hand, both the number and diversity of legal theories pressed by BBVA on appeal mark these arguments as the precise species our waiver rule is designed to deter: transparent afterthoughts and alternative defenses burnished for appeal after the defendant's primary arguments failed at trial.  It is typically only in cases involving issues of "great public moment" or "constitutional magnitude" that we are inclined to disregard our waiver rule.  See id. at 628.  There can be no question that the miscellaneous issues raised in BBVA's appeal are of no such lofty stature.

Moreover, BBVA has other remedies available, as it filed a third-party complaint for contribution against the title search company that prepared the erroneous title report.  If the

-14-

contribution claim fails, BBVA will simply end up on equal footing with other unsecured creditors of the Net-Velázquez estate, and may yet recover some portion of the $300,000 owed by Net-Velázquez. While we do not suggest that there is nothing at stake for BBVA here, the consequences of foreclosing BBVA's tardily raised arguments fall far short of a miscarriage of justice.

As noted, we will only consider new arguments on appeal where the "equities heavily preponderate in favor of such a step." Harwood, 69 F.3d at 627. Having identified and weighed the criteria we deem most relevant to BBVA's request to have its arguments heard for the first time on appeal, we conclude that the equities do not heavily preponderate in favor of allowing these new arguments. Therefore, we affirm the judgment of the district court.

So ordered.