**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT
───────────────────────────

**BAP NO. PR 19-050**
───────────────────────────

**Bankruptcy Case No. 13-06718-EAG**
**Adversary Proceeding No. 15-00207-EAG**
───────────────────────────

**LUIS DIESEL SERVICES, INC.,**
**Debtor.**
───────────────────────────

**NOREEN WISCOVITCH RENTAS, Chapter 7 Trustee,**
**Plaintiff-Appellant,**

**v.**

**MAPFRE PRAICO INSURANCE COMPANY and**
**PUMA ENERGY CARIBE, LLC,**
**Defendants-Appellees.**
───────────────────────────

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Brian K. Tester, U.S. Bankruptcy Judge)**
───────────────────────────

**Before**
**Harwood, Cary, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**
───────────────────────────

**Rafael A. González Valiente, Esq., on brief for Appellant.**
**José A. Sánchez-Girona, Esq., on brief for Appellee,**
**MAPFRE PRAICO Insurance Company.**
**Carlos Infante, Esq., on brief for Appellee, Puma Energy Caribe, LLC.**
───────────────────────────

**January 11, 2021**
───────────────────────────

**Harwood, U.S. Bankruptcy Appellate Panel Judge.**

The chapter 7 trustee, Noreen Wiscovitch Rentas (the "Trustee"), filed a complaint

against MAPFRE PRAICO Insurance Company ("MAPFRE") and Puma Energy Caribe, LLC

("Puma") seeking to avoid and recover an allegedly preferential and/or fraudulent transfer under

§§ 547 and 548.[1]   The bankruptcy court initially denied the parties' cross-motions for summary

judgment and their requests for reconsideration.   After a final pretrial hearing and court-ordered

supplemental briefing, the bankruptcy court entered sua sponte: (1) an opinion and order

vacating the order denying reconsideration and granting MAPFRE's motion for reconsideration

of the order denying summary judgment; and (2) a judgment dismissing the complaint

(collectively, the "Judgment").   The Trustee appealed the Judgment, as well as the bankruptcy

court's denial of her motion to alter or amend the Judgment.

For the reasons discussed below, we **AFFIRM.**

## BACKGROUND

### I.      Pre-Bankruptcy Events[2]

Luis Diesel Services, Inc. (the "Debtor") purchased petroleum products from Puma for

resale to third parties.   In June 2013, MAPFRE, a Puerto Rico surety company, agreed to issue

the Debtor a $200,000 bond to guarantee payment for the Debtor's future purchases from Puma.

On July 5, 2013, the Debtor remitted $100,000 to MAPFRE in the form of three cashier's checks

and MAPFRE issued a Financial Guarantee Bond in the amount of $200,000 (the "Bond"), with

Puma designated as the obligee and the Debtor as the principal.   The Bond provided that

---

[1]   All references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.   All references to "Rule" are to the Federal Rules of Civil Procedure and references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[2]   These facts are primarily gleaned from the statement of uncontested facts set forth in the parties' joint pretrial report.

MAPFRE, as surety, was obligated to pay Puma up to $200,000 for the Debtor's future purchases for a one-year period beginning July 5, 2013. In connection with the issuance of the Bond, the Debtor executed an indemnity agreement, as well as a pledge agreement providing MAPFRE with $100,000 of cash collateral (collectively, the "bond agreement").

Between July 5, 2013 and July 8, 2013, the Debtor purchased new products from Puma and, as of July 19, 2013, there were outstanding invoices for those purchases totaling $95,325. On August 21, 2013, MAPFRE paid Puma $95,325 by a check drawn from MAPFRE's account.[3] A few days later, on August 27, 2013, MAPFRE remitted $4,675 to the Debtor, representing the difference between the Debtor's $100,000 payment to MAPFRE and MAPFRE's $95,325 payment to Puma.

## II.    The Bankruptcy Proceedings

The Debtor commenced a chapter 11 bankruptcy case on August 16, 2013. The case was later converted to one under chapter 7, and the Trustee was appointed.

### A.    The Complaint

In August 2015, the Trustee filed a two-count complaint against MAPFRE and Puma (collectively, "the Defendants") seeking to avoid and recover an allegedly preferential and/or fraudulent transfer under §§ 547 and 548. She alleged that on July 5, 2013, the Debtor transferred $95,325 to MAPFRE to obtain a $200,000 bond, and that MAPFRE never issued the bond but, instead, transferred the funds to Puma for payment of an antecedent debt owed by the Debtor.

---

[3]  Although there are some discrepancies in the parties' submissions in the bankruptcy court as to when the payment to Puma occurred, the bankruptcy court found the payment was made on August 21, 2013. Neither party challenges that finding on appeal.

**B.**     **Cross-Motions for Summary Judgment**

Over the next four years, the parties engaged in extensive motion practice, including the filing of cross-motions for summary judgment.

The Trustee sought summary judgment as to her preferential transfer claim under § 547. She asserted that during the preference period and while the Debtor was insolvent, the Debtor transferred $100,000 to MAPFRE, which then transferred $95,325 to Puma as payment for an antecedent debt owed by the Debtor to Puma.   According to the Trustee, MAPFRE "acted as an intermediary of the preferential transfer" which benefited Puma and she was entitled to avoid and recover the $100,000 transfer.

MAPFRE countered that it was entitled to judgment in its favor as the Trustee had failed to establish the necessary elements of a preferential transfer under § 547.   It claimed the undisputed facts and the evidence showed that the Debtor did not owe anything to MAPFRE at the time of the $100,000 payment and, therefore, the transfer to MAPFRE was not made for the benefit of a creditor or on account of an antecedent debt.

Puma also filed a motion for summary judgment, arguing it was entitled to judgment in its favor as: (1) the Trustee had failed to establish the Debtor was insolvent at the time the $95,325 payment to Puma was made; (2) the Trustee could not avoid the $95,325 payment to Puma because it was a contemporaneous exchange for new value and/or made in the ordinary course of business under § 547(c); and (3) Puma "lacked the bad faith necessary for the Trustee to prevail under § 548."[4]

---

[4]   Puma's reference to "bad faith" is essentially a reference to the "actual intent to hinder, delay or defraud" component of § 548(a)(1)(A).

### C. Order Denying Summary Judgment

On March 1, 2019, the bankruptcy court entered an order denying the parties' respective motions (the "Order Denying Summary Judgment"), concluding there was a genuine issue of material fact as to whether the Debtor's $100,000 payment to MAPFRE "originated from property of the Debtor."

### D. Motions for Reconsideration of Order Denying Summary Judgment

Both the Trustee and MAPFRE moved for reconsideration of the Order Denying Summary Judgment. The Trustee insisted there was no dispute that MAPFRE received $100,000 *from the Debtor*. MAPFRE, on the other hand, stressed that regardless of whether the funds transferred to MAPFRE were property of the Debtor, the Trustee could not prevail under § 547 as she had not established that the Debtor transferred $100,000 to MAPFRE for payment of antecedent debts owed by the Debtor before such transfer was made. Additionally, it maintained the Trustee could not prevail on her fraudulent transfer claim under § 548 as the undisputed facts "completely belie[d] the unsubstantiated allegations of fraud" made by the Trustee in the complaint. Based on the foregoing, MAPFRE asked the court to reconsider the Order Denying Summary Judgment and enter a judgment dismissing the complaint in its entirety. MAPFRE also filed a separate opposition to the Trustee's motion for reconsideration, arguing that the bankruptcy court correctly denied the Trustee's summary judgment motion.

### E. Order Denying Reconsideration of Summary Judgment Order

In an order dated May 7, 2019 (the "Order Denying Reconsideration of S.J. Order"), the bankruptcy court denied both motions for reconsideration, reiterating there was a genuine issue of material fact regarding the origin of the $100,000 payment to MAPFRE which precluded summary judgment and required an evidentiary hearing.

**F.      Final Pretrial Hearing**

The next day, in accordance with the court's pretrial scheduling order, the parties filed a joint pretrial report setting forth their stipulated facts, respective legal arguments, and supporting evidence.   The court then conducted a final pretrial hearing on May 15, 2020.   Although there is no transcript of that proceeding in the record, the parties contend that, at the hearing, Puma argued it should be dismissed from the adversary proceeding because the Trustee had not asserted any claims against it.   After the hearing, the bankruptcy court entered an order granting Puma 20 days "to submit its jurisprudence to prove that it is not part of this litigation," and allowing the Trustee 20 days to file a reply.

**G.      The Parties' Supplemental Submissions**

Puma filed a memorandum of law, arguing that the Trustee was unable to prevail on her preferential and fraudulent transfer claims against it under §§ 547 and 548 because she could not establish that the funds it received from MAPFRE were property of the Debtor.   Accordingly, Puma requested the bankruptcy court to dismiss the Trustee's claims against it.

MAPFRE responded to Puma's memorandum, reiterating its argument that the Debtor's $100,000 transfer to MAPFRE was neither to a creditor nor on account of an antecedent debt, and that it remitted $95,325 to Puma pursuant to its obligations under the Bond and on account of Puma's post-transfer invoices for the Debtor's new purchases of products.   It requested the court to "enter judgment dismissing this case in its entirety with prejudice with respect to all defendants . . . ."

The Trustee also filed a response, reasserting that she had demonstrated a cause of action under § 547 as the undisputed facts showed that MAPFRE received $100,000 from the Debtor

6

during the preference period and then used the Debtor's money to pay $95,325 to Puma for antecedent debts owed by the Debtor.

**H.     Opinion and Order**

On July 19, 2019, without further hearing, the bankruptcy court entered its opinion and order vacating the Order Denying Reconsideration of S.J. Order and granting MAPFRE's motion for reconsideration of the Order Denying Summary Judgment.   See Wiscovitch Rentas v. MAPFRE PRAICO Ins. Co. (In re Luis Diesel Servs. Inc.), Adv. Pro. No. 15-0207, 2019 WL 3268799 (Bankr. D.P.R. July 19, 2019).   The bankruptcy court made the following findings of fact:

> 1.   There has not been an allegation or evidence presented by the Trustee that Mapfre had a claim against [the Debtor] prior to July 5, 2013.
>
> 2.   The check delivered by Mapfre to Puma on August 22, 2013, pursuant to its obligations under the financial guarantee bond number 1303138002013 was in payment of invoices generated by new purchases of petroleum products, after Mapfre was provided the collateral required to issue said bond.
>
> 3.   The Mapfre bond provided that Mapfre as surety was bound to Puma in the sum of $200,000 to guarantee Debtor's purchase of petroleum products and that the bond would be in force for a term of one year beginning on July 5, 2013 (ending on July 5, 2014).   So Mapfre would only be bound to Puma for the payment of new purchases of petroleum products by Debtor on or after July 5, 2013, up to a limit of $200,000.
>
> 4.   As of July 19, 2013, the following were outstanding invoices owed by Debtor to Puma, for new purchases of petroleum products made on or after July 5, 2013:
>
> > Invoice 535138 from July 5, 2013 for $30,397.50
> > Invoice 535145 from July 6, 2013 for $20,475.00
> > Invoice 535151 from July 6, 2013 for $20,475.00
> > Invoice 535152 from July 6, 2013 for $10,237.50
> > Invoice 535153 from July 8, 2013 for $13,650.00
> >
> > TOTAL: $95,325.00
>
> 5.   On August 19, 2013, Mapfre issued an internal memorandum stating, in pertinent part, "Order To Issue Check; *Claim: 20131365214; Name: PUMA*

7

*ENERGY CARIBE LLC; Amount: $95,325.00; Concept: Payment of invoices 535138, 535145, 535151, 535153, and 301593 (Invoice 535152)."*

6. On August 21, 2013, Mapfre issued check number 1311888 in the amount of $95,325.00 payable to Puma pursuant to bond number 1303138002013.

7. The difference between the amount received by Mapfre from the Debtor ($100,000) and the amount paid by Mapfre to Puma ($95,325) was returned to the Debtor on August 27, 201[3] by check number 1307586.

Id. at *1.

It also made the following conclusions of law:

1. Without an allegation or evidence that Mapfre had a claim against the Debtor prior to July 5, 2013, the transfer of the three manager's checks delivered by Debtor to Mapfre on July 5, 2013, cannot be "to a creditor" nor "for the benefit of a creditor."

2. The evidence reveals that the $95,325.00 check delivered by Mapfre to Puma pursuant to its obligations under bond 1303138002013 was in payment of invoices 535138, 535145, 535151, 535152, and 535153 owed by Debtor to Puma for the purchase of petroleum products on or after July 5, 2013, without any evidence that Mapfre was acting merely as conduit for Debtor in order to pay a creditor (Puma) an antecedent debt.

3. There is no evidence that the transfer of funds made to Mapfre on July 5, 2013, that the Trustee seeks to avoid, were for or on account of, an antecedent debt owed by Debtor to Mapfre or Puma before such transfer was made.

4. Therefore, the prima facie elements of [§] 547(b)(1) & (2) of the Bankruptcy Code to avoid a transfer, have not been met.

**THEREFORE**, the Motion for Reconsideration filed on March 15, 2019, [Dkt. No. 110] is granted, the trial hearing set for August 15 and August 16, 2019, is vacated and set aside and the complaint is dismissed.

Id. at *1-2.

A few days later, the bankruptcy court entered the judgment dismissing the complaint.

There was no pending motion to dismiss before it.

8

## I.      Trustee's Motion to Alter or Amend Judgment

The Trustee filed a Motion to Alter or Amend Judgment (the "Motion to Alter or Amend"), asserting that the bankruptcy court's decision was based on its erroneous findings "that the Debtor's $100,000 belonged to MAPFRE once the Bond was issued" and that there was no antecedent debt.[5]   On the contrary, she contended, the Debtor made a $100,000 "deposit" with MAPFRE, rather than a payment or transfer, which was a "pledge of collateral" to guarantee the Bond.   She highlighted that from July 5-8, 2013, the Debtor purchased products from Puma and the resulting amounts owed to Puma constituted an antecedent debt.   MAPFRE, she maintained, then paid that antecedent debt on the Debtor's behalf on August 21, 2013, by remitting $95,325 to Puma from the Debtor's pledged funds.   She claimed, therefore, that the funds MAPFRE used to make the payment to Puma were property of the Debtor and the payment was made on account of an antecedent debt owed to Puma.

For the first time, the Trustee also presented an alternative position, namely, that when MAPFRE transferred $95,325 to Puma due to its obligations under the Bond, an antecedent debt was created from the Debtor *to MAPFRE.*   MAPFRE then collected on that debt from the Debtor's pledged funds, the Trustee claimed, and she was entitled to avoid and recover that transfer.

Both MAPFRE and Puma opposed the Motion to Alter or Amend, arguing that the Trustee was seeking to relitigate matters already decided by the bankruptcy court and attempting to raise new legal theories not previously asserted.   They highlighted that the Trustee was asking

---

[5]  The Trustee identified both Rule 59(e) and Rule 60(b) as a basis for reconsideration but did not specify under which rule(s) she was seeking relief.

the court, for the first time, to invalidate as a preferential transfer MAFPRE's collection of amounts owed to it by the Debtor due to MAPFRE's $95,325 payment to Puma under the Bond.

**J.     Order Denying Motion to Alter or Amend Judgment**

On October 4, 2019, the bankruptcy court, without a hearing, entered an order denying the Motion to Alter or Amend (the "Order Denying Motion to Alter or Amend"), adopting the arguments made by MAPFRE and Puma in their oppositions.

**III.    The Appeal**

This appeal followed.   Although the Trustee asserts that the bankruptcy court made numerous errors of law and fact, she essentially reiterates the arguments presented in her Motion to Alter or Amend, namely, that MAPFRE acted as an intermediary to pay an antecedent debt owed to Puma from the Debtor's pledged funds and, therefore, she can avoid and recover the $95,325 payment to Puma.   MAPFRE and Puma similarly reassert their positions below, arguing there was no evidence that MAPFRE paid Puma with the Debtor's property or that MAPFRE was acting merely as a conduit for the Debtor in order to pay Puma an antecedent debt.   They also argue that the arguments advanced for the first time in the Trustee's Motion to Alter or Amend were not preserved for appeal.

**APPELLATE JURISDICTION AND STANDARD OF REVIEW**

In order to evaluate our appellate jurisdiction and determine the applicable standard of appellate review, we must first ascertain the underlying basis for the bankruptcy court's ruling as there were no pending motions before it and the court did not articulate the legal framework for its decision.   Although the bankruptcy court "dismissed" the complaint, it did so after reconsidering the order denying MAPFRE's summary judgment motion and vacating its prior Order Denying Summary Judgment.   It also made findings of fact and conclusions of law based

10

on the stipulated facts and the evidence presented in the context of cross motions for summary judgment. As such, we construe the Judgment as a grant of summary judgment in favor of the Defendants.[6] We now consider whether we have jurisdiction to review the court's ruling.

## I.      Appellate Jurisdiction

We have jurisdiction to consider appeals from final orders of the bankruptcy court. 28 U.S.C. § 158(a), (c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). "[A]n order granting summary judgment is a final order where no counts against any defendants remain." Hann v. Educ. Credit Mgmt. Corp. (In re Hann), 476 B.R. 344, 353 (B.A.P. 1st Cir. 2012) (citations omitted) (internal quotation marks omitted), aff'd, 711 F.3d 235 (1st Cir. 2013). Because the Judgment is final so, too, is the Order Denying Motion to Alter or Amend as together, the orders resolved the adversary proceeding. See Hamilton v. Appolon (In re Hamilton), 399 B.R. 717, 720 (B.A.P. 1st Cir. 2009) (stating "[a]n order denying reconsideration is final if the underlying order was final and together they end the litigation on the merits") (citation omitted). Therefore, we have jurisdiction to hear this appeal.

---

[6] Although a grant of summary judgment in favor of the defendant is not equivalent to a dismissal of the complaint, "countless lawyers, judges, and even law professors" follow the common practice of referring to summary judgment as a dismissal, as did the court here. Bradley Scott Shannon, A Summary Judgment is not a Dismissal!, 56 Drake L. Rev. 1 (2007) (discussing differences between summary judgment and dismissal). The practice is not uncommon in the First Circuit. See, e.g., Zullo v. Lombardo (In re Lombardo), 755 F.3d 1, 2 (1st Cir. 2014) (reviewing appeal of "the bankruptcy court's dismissal on summary judgment of [the] adversary proceeding"); Lomagno v. Salomon Bros. Realty Corp., No. 07-40188-RWZ, 2008 WL 11512036, at *1 (D. Mass. Aug. 5, 2008) (reviewing order "which dismissed on summary judgment the adversary proceeding").

## II. Standard of Review

Appellate courts review an order granting summary judgment de novo. See Bates v. CitiMortgage, Inc., 844 F.3d 300, 303 (1st Cir. 2016) (citation omitted); Hannon v. ABCD Holdings, LLC (In re Hannon), 839 F.3d 63, 69 (1st Cir. 2016) (citations omitted). An order denying a motion to alter or amend a judgment is reviewed for an abuse of discretion. See Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC), 553 B.R. 162, 171 (B.A.P. 1st Cir. 2016) (citation omitted).

## DISCUSSION

## I. The Summary Judgment Standard

### A. Generally

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056); see also Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 115 (1st Cir. 2011) (citations omitted). "[A]n issue is 'genuine' if the record permits a rational factfinder to resolve that issue in favor of either party." Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 7 (1st Cir. 2015) (citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010)). "[A] fact is 'material' 'if its existence or nonexistence has the potential to change the outcome of the suit.'" Id. (quoting Borges, 605 F.3d at 5). "Summary judgment can enter 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the ultimate burden of proof at trial.'" Sanchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 9 (1st Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

12

## B.       Sua Sponte Grant of Summary Judgment

A court may consider summary judgment on a motion brought by a party, or sua sponte independent of a motion.   Compare Fed. R. Civ. P. 56(a) (permitting a party to move for summary judgment on each claim or defense), with Fed. R. Civ. P. 56(f)(3) (permitting the court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute").   When considering summary judgment sua sponte, the court must first give the parties "notice and a reasonable time to respond."   Fed. R. Civ. P. 56(f). The First Circuit has established two criteria for a sua sponte grant of summary judgment: (1) "discovery [must be] sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts"; and (2) the court must "first give[] the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense."   Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 363 (1st Cir. 2016) (citations omitted) (internal quotation marks omitted); see also Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996).   Adequate notice need not contain the phrase "summary judgment" or explicitly reference Rule 56 to be considered sufficient.   See Nat'l Cas. Co. v. Kiva Constr. & Eng'g, Inc., 496 F. App'x 446, 452 (5th Cir. 2012) (citation omitted).   Directing the parties to "submit simultaneous briefing on the sole remaining legal issue," Sayles v. Advanced Recovery Sys., Inc., 865 F.3d 246, 249 (5th Cir. 2017), or notifying the parties that a "matter would be resolved on the papers," provides parties with adequate notice.   Nat'l Cas. Co., 496 F. App'x at 452.

Here, the bankruptcy court entered the Judgment after the final pretrial hearing, when discovery was complete and after the parties had submitted their stipulated facts and identified the evidence supporting their allegations.   Therefore, the first requirement was satisfied.

13

See Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999) (stating that because the lower court made its sua sponte ruling at the final pretrial hearing, "with discovery complete (or nearly so)," the first condition was satisfied).   We also conclude that the notice requirement was met.   The record reflects that, at the final pretrial hearing, Puma argued it should be dismissed from the adversary proceeding because the Trustee had not asserted any claims against it, and the bankruptcy court permitted supplemental briefing by the parties.   Accordingly, the Trustee was informed that the court was considering resolution of the matter on the papers and was afforded an opportunity to both present her case and to respond to the Defendants' submissions regarding dismissal.   Significantly, although the Trustee challenged the merits of the court's rulings in her Motion to Alter or Amend, she did not contest the procedural context in which the ruling was made or contend she had insufficient notice or opportunity to respond.   Nor does she press any such argument in this appeal.   Under these circumstances, we conclude the Trustee had appropriate notice and opportunity to present argument and evidence on the essential elements of her claims.[7]   Hence, the sua sponte nature of the summary judgment order was not error.

We turn now to the merits of the appeal.

## II. The Bankruptcy Court Did Not Err in Entering Judgment in Favor of the Defendants

### A. The Standards Governing the Avoidance of Preferential and Fraudulent Transfers - §§ 547 and 548

Sections 547 and 548 allow the chapter 7 trustee to avoid certain pre-petition transfers of the debtor's property.   See 11 U.S.C. §§ 547 and 548.

Under § 547(b), the chapter 7 trustee, subject to the defenses set out in § 547(c), may avoid "any transfer of an interest of the debtor in property" made: (1) to or for the benefit

---

[7]   We caution, however, that the better practice is for a bankruptcy court considering sua sponte summary judgment under Rule 56(f) to explicitly state so.

14

of a creditor; (2) for or on account of an antecedent debt; (3) while the debtor was insolvent; (4) during the 90-day period preceding the filing of the petition; and (5) which enables the creditor to receive more than it would in a chapter 7 liquidation.   See 11 U.S.C. § 547; see also Banco Bilbao Vizcaya Argentaria v. Wiscovitch-Rentas (In re Net-Velázquez), 625 F.3d 34, 38 (1st Cir. 2010) (citation omitted).   The trustee has the burden of proving all these elements by a preponderance of the evidence.   See 11 U.S.C. § 547(g); see also 5 Collier on Bankruptcy ¶ 547.13 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2020) (hereinafter "Collier on Bankruptcy"); Warsco v. Preferred Tech. Grp., 258 F.3d 557, 564 (7th Cir. 2001).

Section 548(a) provides, in relevant part:

(a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
. . . .
   (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I).   To prevail under § 548(a), a trustee must prove the following elements by a preponderance of the evidence: "(1) the transfer in question was of an interest of the debtor in property; (2) the transfer occurred on or within 2 years of the date of the filing of the petition; (3) the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) the debtor was insolvent on the date that such transfer was made or became insolvent as a result of the transfer."   Grossman v. Durham Com. Cap. Corp. (In re Connolly Geaney Ablitt & Willard, PC), 614 B.R. 133, 148-49 (B.A.P. 1st Cir. 2020) (citation omitted) (internal quotation marks omitted).

Once the trustee has successfully avoided a preferential or fraudulent transfer under either §§ 547 or 548, the trustee may recover the value of the transferred property from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a)(1)-(2).  The Bankruptcy Code does not define "initial transferee."  Courts, however, distinguish between an initial transferee and a "mere conduit."  See, e.g., Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 58 (2d Cir. 1997) (adopting the Seventh Circuit's "mere conduit" test from Bonded Fin. Servs. v. Eur. Am. Bank, 838 F.2d 890 (7th Cir. 1988)).  "A 'mere conduit' . . . has no dominion or control over the asset; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else.  Mere conduits can do no more than transmit a transferor-debtor's funds to a transferee."  Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Grp., Inc.), No. 01 B 41643(RLB), 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006); see also Richardson v. Preston (In re Antex, Inc.), 397 B.R. 168, 172 (B.A.P. 1st Cir. 2008) (stating that "it is widely accepted that a transferee is one who at least has 'dominion over the money or other asset, the right to put the money to one's own purposes'") (citation omitted).

### B.    Applying the Standards

### 1.    The Transfers in Question

As a preliminary matter, we note there are two transfers at issue here—the Debtor's $100,000 payment to MAPFRE on July 5, 2013 and MAPFRE's $95,325 payment to Puma on August 21, 2013.  The Trustee's complaint did not clearly identify which transfer she was seeking to avoid, and her theory has changed throughout the course of the proceedings. We conclude, however, that the Trustee could not, as a matter of law, avoid either transfer under

16

§§ 547 or 548.[8]  Accordingly, the bankruptcy court did not err in entering the Judgment in favor of the Defendants.

### 2.    The Debtor's Transfer of $100,000 to MAPFRE

### (a)    Preferential Transfer Claim under § 547

To avoid the Debtor's $100,000 payment to MAPFRE, the Trustee needed to prove, among other things, that the transfer was "to or for the benefit of a creditor" and "for or on account of an antecedent debt."  11 U.S.C. § 547(b) (necessary elements of preferential transfer claim) and § 547(g) (burden of proof); see also In re Net-Velázquez, 625 F.3d at 38.  The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor," 11 U.S.C. § 101(10)(A), and a "claim" is defined as a "right to payment."  11 U.S.C. § 101(5)(A).  The Bankruptcy Code defines a "debt" as a "liability on a claim."  11 U.S.C. § 101(12).  "A debt is 'antecedent' for purposes of § 547(b) if it was incurred before the alleged preferential transfer."  Ford v. Skorich, No. 06-CV-97-PB, 2006 WL 2482694, at *3 (D.N.H. Aug. 29, 2006) (citing Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.), 416 F.3d 394, 399 (5th Cir. 2005)), aff'd, 482 F.3d 21 (1st Cir. 2007); see also Argus Mgmt. Grp. v. J-Von N.A. (In re CVEO Corp.), 327 B.R. 724, 728 (Bankr. D. Del. 2005) (stating that a debt is

---

[8]   In her appellate brief, the Trustee identifies a third transfer which she seeks to avoid.  She argues that if MAPFRE paid Puma from MAPFRE's own funds, that payment created an antecedent debt *from the Debtor to MAPFRE*.  MAPFRE, she claims, then collected on that antecedent debt from the Debtor's pledged funds, and she is entitled to avoid and recover that transfer.  The Trustee advanced this argument for the first time in her Motion to Alter or Amend.  It is well established, however, that such a motion "is not a vehicle for the introduction of arguments that could and should have been made to the [trial] court earlier . . . ."  Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 33 (1st Cir. 2012) (citation omitted).  Indeed, the law in this circuit is unequivocal: "When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal."  Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011); see also United States v. Tanco-Pizarro, 892 F.3d 472, 479 (1st Cir. 2018) ("[A]rguments unveiled for the first time in a reconsideration motion are not preserved for appeal.") (citations omitted).  As such, the Trustee's argument has been waived.

antecedent "when the debtor becomes legally bound to pay before the transfer is made") (citation omitted) (internal quotation marks omitted). "In other words, the preference statute does not apply to prepetition transfers made to an entity that was not a creditor of the debtor at the time the transfer was made." Glassman v. Heimbach, Spitko & Heckman (In re Spitko), Adv. Pro. No. 05-0258, 2007 WL 1720242, at *6 (Bankr. E.D. Pa. June 11, 2007).

The record reflects that at no point during the adversary proceeding did the Trustee make any allegation or present any evidence that MAPFRE had a claim against the Debtor, or that the Debtor owed any debts to MAPFRE, prior to the Debtor's transfer of $100,000 to MAPFRE on July 5, 2013. Nor did she dispute MAPFRE's repeated allegations that it did not have a claim against the Debtor and was not owed anything by the Debtor prior to the July 5, 2013 transfer. Hence, there was no genuine dispute that, at the time the Debtor transferred $100,000 to MAPFRE, MAPFRE was not a "creditor" of the Debtor and the transfer in question was not "for or on account of an antecedent debt" owed by the Debtor. See Ford, 2006 WL 2482694, at *3. Accordingly, the Trustee could not avoid the $100,000 payment as a preferential transfer under § 547 as a matter of law.

### (b) Fraudulent Transfer Claim Under § 548

Moreover, despite the Trustee's contrary allegation in the complaint, the parties' stipulated facts establish that MAPFRE issued the $200,000 Bond in exchange for the $100,000 received from the Debtor on that same date. The Trustee did not argue or present any evidence demonstrating the Debtor received less than a reasonably equivalent value in exchange for the $100,000 payment. Accordingly, the Trustee could not, as a matter of law, avoid the $100,000 payment as a fraudulent transfer under § 548.

### 3. MAPFRE's Transfer of $95,325 to Puma

We turn now to MAPFRE's $95,325 payment to Puma on August 21, 2013.

To avoid the $95,325 payment made by MAPFRE to Puma under either § 547 or § 548, the Trustee had the burden of proving the "threshold requirement" that the transfer was "of an interest of the debtor in property." Howison v. Milo Enters., Inc. (In re Freaky Bean Coffee Co.), 494 B.R. 771, 781 (B.A.P. 1st Cir. 2013) (citing Begier v. IRS, 496 U.S. 53, 58 (1990); Parks v. FIA Card Servs., N.A. (In re Marshall), 550 F.3d 1251 (10th Cir. 2008)). The Bankruptcy Code does not define the term "interest of the debtor in property." The U.S. Supreme Court has explained, however, that "property of the debtor," for purposes of avoidance actions, is "best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Begier, 496 U.S. at 58; see also Darr v. Dos Santos (In re TelexFree, LLC), 941 F.3d 576, 583 (1st Cir. 2019). Accordingly, "the phrase is 'coextensive with property of the estate as defined in . . . § 541(a)(1).'" Walters v. Stevens, Littman, Biddison, Tharp & Weinberg, LLC (In re Wagenknecht), 971 F.3d 1209, 1213 (10th Cir. 2020) (quoting In re Marshall, 550 F.3d at 1255 n.2). The First Circuit has ruled that "[w]hen determining whether certain funds are considered 'an interest of the debtor in property,' the ability of the debtor to exercise control over the property can be determinative." Riley v. Nat'l Lumber Co. (In re Reale), 584 F.3d 27, 31 (1st Cir. 2009) (citations omitted); see also In re Freaky Bean Coffee Co., 494 B.R. at 781.

Here, it is undisputed that Puma received $95,325 from MAPFRE and that it did not receive anything directly from the Debtor. Accordingly, the only way the Trustee could avoid and recover the $95,325 transfer to Puma was by demonstrating there was a single transfer of the

19

Debtor's funds from the Debtor to Puma with MAPFRE simply acting as an intermediary or conduit. See Banco Bilbao Vizcaya Argentaria v. Wiscovitch-Rentas, No. 08-2323 (GAG), 2009 WL 1309687, at *2 (D.P.R. May 8, 2009) (holding that, where debtor deposited real estate sale proceeds in an account held by the debtor's company and the bank that held a lien on the property then attached those funds, trustee could avoid the attachment as a preferential transfer because the company was "a mere conduit for the funds in a 'one step' attachment transaction" between the debtor and the bank). This is the position the Trustee presses on appeal. The Trustee, however, confuses MAPFRE's obligation under the Bond to pay Puma for the Debtor's unpaid invoices for new purchases made during the covered period, with the collateral negotiated and paid by the Debtor to MAPFRE as a guarantee for a potential default by the Debtor under the terms of the bond agreement. A contracting party who "posts a bond interposes a third-party surety between himself and contract claimants; the surety essentially agrees, in exchange for the contractor's promise of indemnification or . . . a lien on the contractor's assets, to pay the claims of contract creditors *out of the surety's own funds* in an aggregate amount up to the limits of the bond in the event of the contractor's breach." O'Malley Lumber Co. v. Lockard (In re Lockard), 884 F.2d 1171, 1178 (9th Cir. 1989) (emphasis added). Typically, the transaction between the debtor and the surety, whereby the debtor transfers its property to the surety as collateral, occurs when the suretyship is first created. See David Gray Carlson and William H. Widen, The Earmarking Defense to Voidable Preference Liability: A Reconceptualization, 73 Am. Bankr. L.J. 591, 604 (Summer 1999) (discussing earmarking defense and payments under surety bond). "[The] surety owes [the creditor] independently" from the debtor and it satisfies its own independent obligation to the creditor with its own funds. Id. at 603-04.

20

Moreover, "a transfer of money or property owed a third party to a creditor of the debtor is not a preference." Collier on Bankruptcy ¶ 547.03 (citing In re Freaky Bean Coffee Co., 494 B.R. at 782) (other citation omitted). "Thus, payments made by an endorser, surety or guarantor are not preferential because there is no transfer of the debtor's property." Collier on Bankruptcy ¶ 547.03; see also Brown v. First Nat'l Bank of Little Rock, Ark. (In re Ark-La Materials, Inc.), 748 F.2d 490, 491 (8th Cir. 1984) (citations omitted). It follows, therefore, that payments made by a third-party surety to an obligee in compliance with its legal obligations under the surety bond are not a transfer of an interest of the debtor in property and do not constitute preferential or fraudulent transfers.

Here, there is no evidence in the record that MAPFRE used the Debtor's funds to pay Puma. In fact, it was undisputed that MAPFRE made the payment to Puma by a check drawn from MAPFRE's own bank account, and the Trustee presented no evidence showing that MAPFRE kept the $100,000 received from the Debtor separate from its other funds or that it lacked dominion or control over the funds. See In re Antex, Inc., 397 B.R. at 172. And there was no other evidence in the record demonstrating that MAPFRE was merely acting as a conduit or intermediary for the Debtor's payment of an antecedent debt to Puma. See Banco Bilbao Vizcaya Argentaria, 2009 WL 1309687, at *2. Nor does the record reveal any exercise of ownership or control by the Debtor over either the Bond or the $100,000 delivered to MAPFRE. See In re Reale, 584 F.3d at 31 (ruling that debtor's ability to "exercise control over the property can be determinative" when determining whether certain funds are "an interest of the debtor in property"). Accordingly, the undisputed facts and the evidence presented leads to only one conclusion—that the funds paid to Puma were not property of the Debtor. As such, the Trustee could not, as a matter of law, avoid the $95,325 payment to Puma under either §§ 547 or 548.

21

**III.  The Bankruptcy Court Did Not Abuse its Discretion in Denying the Motion to Alter or Amend Judgment**

Because the Trustee filed the Motion to Alter or Amend within 14 days of the issuance of the judgment, it is properly treated as a motion under Bankruptcy Rule 9023, which makes Rule 59 applicable to bankruptcy proceedings.  See Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado), 561 B.R. 598, 607 (B.A.P. 1st Cir. 2017) (citation omitted).  It is well settled in the First Circuit that to prevail on a Rule 59(e) motion, the moving party must establish "a manifest error of law or must present newly discovered evidence."  Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citations omitted); see also Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago Vázquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012) (citing Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)).  Reconsideration of a previous order is "an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources."  In re Ramirez Rosado, 561 B.R. at 607 (citation omitted) (internal quotation marks omitted).  Thus, "courts have 'considerable discretion' in deciding whether to grant or deny a motion under the rule."  Nieves Guzmán v. Wiscovitch Rentas (In re Nieves Guzmán), 567 B.R. 854, 863 (B.A.P. 1st Cir. 2017) (quoting ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008)).

The Trustee's notice of appeal specifically indicates that she seeks review of the bankruptcy court's denial of her Motion to Alter or Amend.  She does not, however, address that ruling in her brief and offers no arguments for why the court's denial of reconsideration constituted an abuse of discretion.  It is well settled that a party's "failure to brief an argument will result in waiver for purposes of appeal."  Ortiz v. Gaston Cnty. Dyeing Mach. Co., 277 F.3d 594, 598 (1st Cir. 2002) (citations omitted).  Even were the issue not waived, we would hold that the bankruptcy court did not abuse its discretion in denying the Trustee's Motion to Alter or

22

Amend, as she failed to demonstrate that the bankruptcy court made manifest errors of law or fact when adjudicating the legal controversy at hand.

## CONCLUSION

For the reasons set forth above, we conclude the bankruptcy court did not err in entering the Judgment in favor of the Defendants. Nor did the bankruptcy court abuse its discretion when it denied the Motion to Alter or Amend. Accordingly, we **AFFIRM** both the Judgment and the Order Denying Motion to Alter or Amend.